STATE OF MINNESOTA *vs.* GEERT A. VANDERSLUIS.

November 30, 1889.

Constitution—Regulation of Practice of Dentistry.—Chapter 19, Laws 1889, entitled "An act to regulate the practice of dentistry in the state of Minnesota," is constitutional.

Defendant was prosecuted in the municipal court of St. Paul on a complaint charging him with practising dentistry by treating the teeth of one Brannon, in that city, on September 2, 1889, without having complied with the statutory requirements. It was admitted that the facts were as stated in the complaint, and also that at the time of the offence charged the defendant was a *bona fide* student of dentistry, pursuing clinical advantages under the direct supervision of a preceptor and licensed dentist in that city, and had, as such student, so practised dentistry in the office of such preceptor ever since July 6, 1887, and that he treated Brannon in such office as such student; that he has been continuously engaged in the study and practice of dentistry since September 11, 1884, during which period he was, for a year and nine months, a student with certain dentists named, in St. Paul, and under their direct supervision as preceptors, and from September, 1886, to April, 1887, he was a stu-

dent at the Pennsylvania College of Dental Surgery, at Philadelphia, a dental college of the first rank; that after leaving such college he practised dentistry in his own office in Illinois for three months, and then was engaged as a student in the pursuit of clinical advantages in the office of a dentist in Minneapolis, and under his direct supervision as preceptor. It was further admitted that defendant possesses the requisite learning and experience to perform all operations performed by dentists, etc., and was so competent, learned and experienced on September 1, 1889, and at the 'date of passage of Laws 1889, c. 19, and that he has for more than three years last past been dependent on his practice as a dentist for his livelihood except while in the dental college; that he is 21 years of age, is a native of this state, and has always resided here except while temporarily absent at the dental college and while practising in Illinois. On these facts the defendant was found guilty and sentenced to pay a fine of $25 or be committed to the workhouse for 30 days, from which judgment he appeals.

*Davis, Kellogg & Severance,* for appellant.

*M. E. Clapp,* Attorney General, *J. J. Egan, M. D. Munn,* and *Selden Bacon,* for the State.

GILFILLAN, C. J. That the legislature may prescribe such reasonable conditions upon the right to practise medicine or law as will exclude from the practice those who are unfitted for it, is so well settled by decisions of the courts as to be no longer an open question. The power rests on the right to protect the public against the injurious consequences likely to result from allowing persons to practise those professions who do not possess the special qualifications essential to enable the practitioner to practise the profession with safety to those who employ him. The same reasons apply with equal force to the profession of dentistry, which is but a branch of the medical profession. That, in the exercise of that power, the legislature may require, as a condition of the right to practise, that the person shall procure a license; may designate some officer or board to issue the license, and to determine whether an applicant possesses the qualifications required to entitle him to it; and may prescribe, so far as can be done by a general law, what qualifica-

tions shall be required, and how the possession of them by the applicant shall be ascertained, — necessarily follows from the power itself. It is for the legislature, and not for the courts, to determine those things. The only limit to the legislative power in prescribing conditions to the right to practise in a profession is that they shall be reasonable. Whether they are reasonable,—that is, whether the legislature has gone beyond the proper limits of its power,—the courts must judge. By the term "reasonable" we do not mean expedient, nor do we mean that the conditions must be such as the court would impose if it were called on to prescribe what should be the conditions. They are to be deemed reasonable where, although perhaps not the wisest and best that might be adopted, they are fit and appropriate to the end in view, to wit, the protection of the public, and are manifestly adopted in good faith for that purpose. If a condition should be clearly arbitrary and capricious; if no reason with reference to the end in view could be assigned for it; and, especially, if it appeared that it must have been adopted for some other purpose,—such for instance, as to favor or benefit some persons or class of persons,—it certainly would not be reasonable, and would be beyond the power of the legislature to impose.

In 1885 the legislature passed an act to regulate the practice of dentistry. Chapter 199, Laws 1885. This act continued in force until it was superseded and repealed by chapter 19, Laws 1889. The latter act is assailed as unconstitutional. Though the act of 1885 is not called in question, we think it well to refer to some of its provisions. Section 1 made it unlawful for any person not at the passage of the act engaged in the practice of dentistry in the state to commence such practice without a certificate as in the act provided. Section 5 provided for the certificate, which was to be issued by the board of examiners provided for in the act, upon a satisfactory examination. Section 4 made it the duty of every person at the time engaged in the practice of dentistry in the state to, within six months after the passage of the act, cause his name and residence or place of business to be registered with the board, in a book to be kept by it for that purpose, and provided that every person so registered as a practitioner of dentistry might continue to practise as such. Chapter 19,

Laws 1889, § 1, provides that from and after September 1, 1889, it shall be unlawful for any person to practise dentistry in the state, unless he shall first have obtained a certificate of registration, and filed the same, or a certified copy thereof, with the clerk of the district court of the county of his residence, as in the act afterwards provided. Sections 2 and 3 provide for a board of examiners. Section 4 makes it the duty of the board to transfer to a register to be kept by it for that purpose, within 10 days after the second Tuesday in July, 1889, the name, residence, and place of business of each and every person who on the second Wednesday in July, 1889, pursuant to the act of 1885, shall be qualified to practise dentistry in the state, and who shall then be duly registered on the books of the board created by the act of 1885, and makes it the duty of the board to send to each of such persons a certificate of his registration. It will be seen from these various provisions that those qualified to practise dentistry under the law of 1885 continued to be so qualified under the act of 1889, including both those who were in practice at the date of the former act, and registered as it required, and those who became qualified by the examination and certificate provided by it.

Section 5 of the act of 1889, the provisions of which furnish one of the grounds on which appellant assails the act as unconstitutional, provides that any person who shall desire to begin the practice of dentistry in the state after September 1, 1889, shall make application for examination to the board of examiners, paying a fee of $10, and shall undergo an examination. The section further enacts: "In order to be eligible for such examination, such person shall present to said board his diploma from some dental college in good standing, and shall give satisfactory evidence of his rightful possession of the same: *provided*, also, that the board may in its discretion admit to examination such other persons as shall give satisfactory evidence of having been engaged in the practice of dentistry ten years prior to the date of passage of this act. Said board shall have the power to determine the good standing of any college or colleges from which such diplomas may have been granted." It then goes on to prescribe the manner, extent, and subjects of the examination. What the particular objections of a constitutional character the appellant makes

to this section are, it is somewhat difficult to tell from his brief. We infer, however, that he claims the section to be objectionable because, no matter how well qualified by learning and skill or experience one may be, he has no absolute right to be examined by the board, unless he has a diploma from a dental college in good standing, such good standing to be determined by the board; and this he claims to be discrimination between the rich and poor, because one may be pecuniarily able, and another not able, to attend a dental college. The mere fact of discrimination in such a law is no objection to it. Requiring a certain degree of learning and skill as a condition of being allowed to practise is discrimination between those who have and those who have not that degree of learning and skill,—between those who are able and those who are not able to acquire it. If there were discrimination between persons or classes upon any matter not pertinent to the legitimate purpose of the law, to wit, to secure fitness and competency in those who shall be permitted to practise, it would be objectionable. As, for instance, if it were as to place of birth, color, or religious belief. The requirement of a diploma from some college or learned society, in order to practise medicine, has been inserted in the laws of many states, and questioned in but few. In Massachusetts, a law required the practitioner to have been licensed by the Medical Society, or been graduated a doctor in medicine at Harvard University. This was held constitutional in *Hewitt* v. *Charier,* 16 Pick. 353. The statute of Nevada (1875) required a medical education, and a diploma from some regularly-chartered medical school. This was held constitutional in *Ex parte Spinney,* 10 Nev. 323. As the fact of having graduated at and received a diploma from a school or college devoted to teaching the particular science, medicine, surgery, or dentistry, bears directly upon the person's qualifications to practise, we have no doubt the legislature might have made that the sole test. That this statute allows, in the discretion of the board, 10 years' practice prior to the passage of the act as a substitute for the diploma of a college, furnishes no objection, on constitutional grounds, to the act. True, it is asked why 10 years' practice after the passage of the act ought not to entitle one to the same right as 10 years' practice before its passage. A sufficient answer to this is that such practice after the act, if in

this state, would be in violation of law, and the legislature surely may provide against inviting violations of the law, and for that purpose withhold all benefit from its violaters.

It is objected that it is left to the discretion of the board to determine whether 10 years' practice, instead of a diploma, shall admit one to examination. On the score of expediency, some question might be made upon it. But, as the legislature might have left that provision out altogether, and made no exception to the requirement that an applicant for examination should have a diploma, we do not see that any question can be made of the power to fix the period of 10 years, nor of the power to leave it for the board to determine in each particular case whether the extent and character of the applicant's practice during the period has been such as to be equal, as evidence of his qualifications, to the possession of a diploma.

Section 7 reads: "All persons shall be said to be practising dentistry within the meaning of this act who shall, for a fee or salary or other reward, paid either to himself or to another person for operations or parts of operations of any kind, treat diseases or lesions of the human teeth or jaws, or correct malpositions thereof. But nothing in this act contained shall be taken to apply to acts of *bona fide* students of dentistry, done in the pursuit of clinical advantages, under the direct supervision of a preceptor or a licensed dentist in this state, during the period of their enrolment in a dental college, and attendance upon a regular, uninterrupted course in such college." It is claimed that this shows the law to be an arbitrary measure for the benefit of dentists, by giving them a monopoly to practise a branch of surgery which has heretofore been largely carried on by regular physicians and surgeons. It was proper, in order to give precision to the law, to define what was meant by practising dentistry. It is not, however, to be supposed the legislature intended to enlarge the sphere of the profession. There may be diseases of, hurts to, and operations upon, the jaws that are within the legitimate profession both of the general surgeon and of the dentist. We do not know how this is. But, if it be so, the licensed surgeon would be protected by his license in treating such. The act before us could hardly be so construed as to limit the right of the surgeon under his license. It

is claimed, also, that it discriminates between students of dentistry, by allowing them to operate upon the teeth and jaws during the period of their enrolment in a dental college and attendance upon a regular, uninterrupted course in such college, and excluding others. The purpose of this provision of the law is apparent. It is to permit to actual, *bona fide* students the benefits of practical work under an instructor. But, to prevent evasions of the law by persons practising the profession under the pretence of being students, the act very properly defines who shall be regarded as students, within the clause allowing them to perform operations or parts of operations. It is open to every student to bring himself within the definition.

The interpretation of the clause under consideration, upon which appellant argues that it was intended to prefer schools of dentistry within the state, as against those out of it, is too narrow. We see no reason why a student in such a school in another state may not, during vacation, pursue his studies here under a licensed dentist, and be within the meaning of the clause. By "regular, uninterrupted course," the act does not mean a course in which there are no vacations, such as all schools have. To hold that it does, would lead to this unreasonable result,—that the student, even in a school in this state, might during the term have the benefit of practice in operations under a licensed dentist, but would have to suspend as soon as the term should close. The provisions and requirements of the law are undoubtedly rigorous. They ought to be, in any law aiming to protect the public against ignorance and incompetency in so important a profession as the medical profession, in any of its branches. We see nothing in the provisions of this law that was not clearly inserted by the legislature, in good faith, to effect the end in view. The law is valid.

Judgment affirmed.