[No. 13913.   Department Two.   May 18, 1917.]

THE CITY OF SEATTLE, *Respondent*, v. H. F. GIBSON, *Appellant*.[1]

CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES—EQUAL PROTECTION OF THE LAWS — DRUGGISTS. An ordinance requiring druggists to obtain a license to do business is unconstitutional where it provides that the license committee of the city council may, in its discretion, investigate the matters set forth in a petition for a license, and if it recommends favorable action, it shall propose a special ordinance therefor, to be passed by the city council; since it reposes a purely arbitrary discretion in the license committee and city council to grant or withhold licenses, irrespective of any qualification of the applicant, and in violation of Rem. Code, § 8445, authorizing any registered pharmacist to engage in the drug business, and subsequent sections making the business a lawful business.

Appeal from a judgment of the superior court for King county, Jurey, J., entered November 28, 1916, upon a trial and conviction of violating a city ordinance. Reversed.

*Peterson & Macbride*, for appellant.

*Hugh M. Caldwell* and *Thomas J. L. Kennedy*, for respondent.

*Preston & Thorgrimson*, amici curiae.

[1]Reported in 165 Pac. 109.

MOUNT, J.—The appellant was convicted upon a charge of conducting a drug store and pharmacy in the city of Seattle in violation of an ordinance of that city. He has appealed from a judgment imposing a fine.

There is no dispute in the facts. The appellant was conducting a drug store and pharmacy in the city of Seattle. He was qualified to operate and conduct a drug store and pharmacy under the laws of this state. He held a certificate issued by the state pharmacy board. Prior to his arrest, he had paid ten dollars to the city and made a demand for a license, but without complying with the ordinance providing therefor.

The contention of the appellant in the lower court and in this court is that the ordinance is void, being in contravention of section 1, 14th amendment to the constitution of the United States. The ordinance in question is an ordinance relating to the licensing of drug stores and pharmacies in the city of Seattle, and the revocation of such licenses, and providing penalties for violation of the ordinance.

Section 1 of the ordinance defines the word "person," as used in the ordinance.

Section 2 provides that it shall be unlawful for any person within the city of Seattle to carry on, conduct or operate a drug store or pharmacy without first procuring a license to do so, and also provides that the fee for such license shall be fixed at ten dollars per annum, payable in advance.

Section 3 of ordinance No. 36,230 is as follows:

"Every 'drug store and pharmacy license' shall be granted by ordinance of the city council, and no license shall be granted unless the applicant therefor shall have filed with the city comptroller a petition in writing addressed to the city council, signed by the applicant, and setting forth the names in full of the applicant, and in case of a corporation, the names of the officers of such corporation, the street name and number of all entrances to the place of business, the name under which said business is to be carried on, whether the applicant is the owner or the lessee of the premises, the length

.of time the applicant has been a resident of the city, and in the case of an individual the place of residence of such applicant, and in the case of a corporation, the location of the principal office or place of business of such corporation, which said petition shall be made on a blank form to be furnished by the city comptroller.

"The city comptroller shall report the petition to the city council which shall refer the same to the license committee, which committee shall consider such petition and may, in its discretion, investigate any of the matters set forth therein, and report its findings and recommendations thereon to the city council, and if said committee recommends that said petition be granted shall accompany such recommendation with a proposed ordinance granting the license petitioned for.

"Upon the taking effect of any ordinance granting such license, the city comptroller shall, upon the presentation to him of the receipt of the city treasurer showing payment of the license fee herein required, issue to the petitioner the license granted by said ordinance.

"Any license issued under authority of the city council as herein provided, shall be kept posted in a conspicuous place in the room in which the licensee carries on or conducts his business, and alongside of the certificate of registration of the licensed pharmacist in charge thereof."

Section 4 provides that no license issued under the authority of the ordinance shall be transferable or assignable, and no rebate or refund of money paid for a license shall be made.

Section 5 provides that the city council may, at any time, revoke any license issued under authority of the ordinance, but before such revocation, the person holding such license shall be notified in writing of the intention of the city council to revoke the same, and may be heard in opposition to such revocation if he so desires. That any person whose license has been revoked shall not be again licensed to carry on or conduct a drug store or pharmacy in the city of Seattle for a period of one year. The city council is authorized, after a proper hearing, to suspend any license issued under authority of the ordinance for a period of not exceeding sixty days.

Section 6 provides that any person violating or failing to

comply with the provisions of the ordinance shall be deemed guilty of a misdemeanor, and, on conviction, fined in any sum not exceeding one hundred dollars, or imprisoned in the city jail for a term not exceeding thirty days, or both fine and imprisonment.

Section 7 provides when the ordinance shall take effect.

The ordinance was passed by the city council on the 31st day of July, 1916, approved on the 4th day of August, 1916, and became effective thirty days thereafter.

It will be noticed that this ordinance provides that an applicant for a license to do business as a druggist and pharmacist must file a petition with the city comptroller, and that "the city comptroller shall report the petition to the city council, which shall refer the same to the license committee, which committee shall consider such petition and may, in its discretion, investigate any of the matters set forth therein, and report its findings and recommendations thereon to the city council, and if said committee recommends that said petition be granted, shall accompany such recommendation with a proposed ordinance granting the license petitioned for."

It is plain from this provision of the ordinance that the license committee is vested with discretion to report either favorably or unfavorably to the city council. If this discretion is exercised favorably, and a recommendation that a license be issued is made by the license committee, it shall report an ordinance granting the license petitioned for. The ordinance also provides that every license shall be granted by ordinance of the city, that is, before an applicant for a license may receive the same, a special ordinance must be passed granting a special privilege, and the passage of such ordinance rests wholly in the discretion of the city council.

The ordinance in question here makes no provision for determining the qualifications of an applicant. It does not require the license committee, to whom the petition is referred, to investigate any of the facts stated in the petition of the applicant. The committee may investigate or not as its dis-

cretion dictates. In short, the ordinance leaves to the license committee the authority arbitrarily to grant or reject a petition for a license to operate or conduct a drug store and pharmacy. This discretion is purely arbitrary under the ordinance, because no standard of qualifications, nor rule, is fixed upon which an investigation may be made. The ordinance recites that the committee may, in its discretion, investigate any of the matters set forth in the petition, and if it may investigate these matters in its discretion, it may not investigate them at all, and may report according to its desire.

In the case of *Yick Wo v. Hopkins,* 118 U. S. 356, where an ordinance of the city of San Francisco made it unlawful for any person or persons to carry on a laundry within the corporate limits of the city and county of San Francisco without first having obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone, the supreme court of the United States held that such an ordinance was void because it was purely arbitrary and acknowledged neither guidance nor restraint. That court there said:

"There is nothing in the ordinances which points to such a regulation of the business of keeping and conducting laundries. They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons. So that, if an applicant for such consent, being in every way a competent and qualified person, and having complied with every reasonable condition demanded by any public interest, should, failing to obtain the requisite consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of *mandamus,* to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them authority to withhold their assent, without reason and without responsibility. The power given to them is not

confided to their discretion in the legal sense of that term, but is granted to their mere will."

In the case of *County of Los Angeles v. Hollywood Cemetery Ass'n*, 124 Cal. 344, 57 Pac. 153, 71 Am. St. 75, where an ordinance prohibited cemeteries in the city and county of Los Angeles, and provided that no one could establish a cemetery without the permission of the county supervisors, it was held that the ordinance·was void. The court there said:

"It would hardly be contended that an ordinance declaring it to be unlawful to engage in the business of farming or merchandising in the county without the permission of the supervisors would be a reasonable exercise of legislative power, or could reasonably be said to be exercising the power to regulate. The supervisors may impose a license, the payment of which shall be a condition to the enjoyment of the privilege of engaging in lawful occupations; they may regulate the manner of conducting the business if it be of a character tending to be injurious; but if the business be lawful, and having no injurious tendency, they cannot say who shall and who shall not exercise the right itself. Under the guise of regulating a business the municipality cannot make prohibition possible by committing to the officers of the municipality the arbitrary power to deny permission to engage in that business. We do not think it was ever intended by the people in ordaining the section of the constitution referred to, or of the legislature in the statutory enactment, to include, in the power to make and enforce regulations, a power purely personal and arbitrary."

In *State v. Mahner*, 43 La. Ann. 496, 9 South. 480, where an ordinance was passed by the city of New Orleans relating to the keeping of cows, the ordinance vested arbitrary power in the city council. The supreme court of Louisiana said:

"The discretion vested by the ordinance in the city council is in no way regulated or controlled. There are no conditions prescribed upon which the permit may be granted. It is within the power of the city council to grant the privilege to some, to deny it to others. The discretion vested in the council is purely arbitrary. It may be exercised in the interest of a favored few. It may be controlled by partisan consider-

ations and race prejudices, or by personal animosities. It lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented."

Counsel for the city argue that the city council has power to control occupations which are perhaps useful but which may be evil to the public, such as the selling of liquor, trading stamps, dispensing of poison, etc., and that such occupations may not be engaged in as a matter of common right, and may be regulated or may be entirely prohibited. There can be no doubt that the state, or other proper authorities, under police power, may regulate or prohibit the sale of liquors or poisons, or articles that may be deleterious to the health of a community, and may prescribe the qualifications of persons who may deal therein, but it does not follow that the state or a municipal corporation may say that one person may and that another person, equally qualified, may not, engage in a lawful business, because that would be to discriminate and not to regulate or prohibit. We have no doubt of the right of the city to require certain qualifications of applicants, not inconsistent with state law, and to provide how those qualifications may be determined, but it may not say, by special act, that one person, or set of persons, may engage in any particular lawful calling to the exclusion of all other persons. Persons equally qualified are entitled to the same privileges under the law, and a statute or an ordinance is void which interferes with or abridges the privileges and immunities of citizens who are equally entitled to the protection of the law. There can be no reasonable escape from the conclusion that this ordinance provides for a discretion which is purely arbitrary, and, therefore, an illegal method of determining who shall and who shall not be granted a license to conduct a drug store or pharmacy. It cannot be reasonably contended that the business of conducting a pharmacy or drug store is in itself an unlawful business. The keeping of a pharmacy or drug store has always been regarded as a legitimate business, and persons engaged therein are engaged in a legitimate

enterprise. Some of the articles they deal in are, no doubt, poisons. The selling of such articles may be regulated or prohibited; but to say, without qualification, who shall and who shall not engage in the drug business is not a regulation of the business itself. The statute of the state, Rem. Code, § 8445, authorizes any person who is a registered pharmacist to engage in the drug business. In the case of a druggist, the applicant for a license must show to the board of pharmacy the possession of certain qualifications.

Section 8452 requires the state board of pharmacy to supervise the practice of pharmacy in the state.

Section 8459 requires druggists to keep a record of the sales of poisons and spirituous or malt liquors.

Section 8462 provides that any license under the act may be revoked for cause, upon a sworn complaint, upon notice to the licensee and upon a hearing.

Section 8463 provides for appeal from an order revoking a license.

So it is plain that the business of conducting a pharmacy or drug store in this state is a lawful business under the laws of the state, and, therefore, neither state nor city, under the guise of regulation, may delegate to any person, or set of persons, the right to arbitrarily designate one who may enter the business and, in their discretion, reject another, equally qualified, who may desire to enter the business, because neither may grant privileges which, upon the same terms, may not equally belong to all citizens. Const., art. 1, § 12.

An ordinance like this, which provides for a special privilege dependent upon the arbitrary discretion òf a city council, or a committee of that body, is, as was said in *State ex rel. Garrabad v. Dering*, 84 Wis. 585, 54 N. W. 1104, 36 Am. St. 948, 19 L. R. A. 858,

"entirely un-American and in conflict with the principles of our institutions and all modern ideas of civil liberty. It is susceptible of being applied to offensive and improper uses, made subversive of the rights of private citizens, and it inter-

feres with and abridges their privileges and immunities, and denies them the equal protection of the laws in the exercise and enjoyment of their undoubted rights."

We are satisfied, upon both reason and authority, that this ordinance is void.

The judgment appealed from is therefore reversed, and the cause ordered dismissed.

Ellis, C. J., and Fullerton, J., concur.

Parker, J. (concurring)—I concur in the result reached in the foregoing opinion, but dissent from the view, seemingly expressed therein, that a city has power to determine the qualifications, moral or otherwise, of persons who may conduct a drug store, or determine the qualifications of persons who may practice pharmacy. The state has enacted law for the determination of the qualifications of pharmacists, and when it issues a license to one it has determined is so qualified, the city plainly cannot curtail the right which the license confers. Aside from the strict practice of pharmacy, the conducting of a drug store, being, as the opinion states, a lawful business, is no different than the conducting of a grocery or drygoods store, in so far as is concerned the city's power to say who may or who may not own or conduct it. It may be that a city can levy a license tax upon such a business for the purpose of raising revenue, and it is possible that a city may, in some measure, regulate the manner in which it shall be conducted; but however this may be, I am firmly convinced that the city cannot say who may or who may not own or conduct a drug store or a pharmacy, any more than it can say who may or who may not own or conduct a grocery or drygoods store. That the city cannot do the latter is, to my mind, too self-evident to admit of argument. I want to reverse the judgment of conviction rendered by the superior court because, as I view it, the city has, by enacting this ordinance, arrogated to itself the power to determine who are

privileged to follow this lawful business. To say that this is a flagrant usurpation of power is, to my mind, stating the case none too strongly against the city.

HOLCOMB, J., concurs with PARKER, J.