## NOBLE v. DOUGLAS, Pros. Atty., et al.

(District Court, W. D. Washington, N. D. April 15, 1921.)

No. 233.

Constitutional law ⊙═88—Physicians and surgeons ⊙═2—Statute vesting board with arbitrary power to grant or refuse licenses to practice dentistry held unconstitutional.

Rem. & Bal. Code Wash. § 8416, being part of a statute creating a board of dental examiners, with authority to grant licenses to practice dentistry, without which such practice is made unlawful, and which provides that any person seeking to practice dentistry shall file an application with the board for an examination, and present evidence of good moral character and a diploma from some dental college in good standing, but which does not in terms require the board to make such examination, nor prescribe of what it shall consist, or for what qualifications the applicant shall be tested, but vests the board with arbitrary power to grant or refuse a license at its will, *held* void as not an exercise of the police powers of the state, but an arbitrary and unwarranted interference with the constitutional right to carry on a lawful business.

In Equity. Suit by Leon Noble against Malcolm Douglas and Bert C. Ross, Prosecuting Attorney and Deputy Prosecuting Attorney for King County, Wash. On motion for preliminary injunction. Granted.

Browder Brown and J. W. A. Nichols, both of Tacoma, Wash., for complainant.

Malcolm Douglas and Bert C. Ross, both of Seattle, Wash., pro se.

Before GILBERT, Circuit Judge, and CUSHMAN and NETERER, District Judges.

CUSHMAN, District Judge. The bill avers:

"That complainant is by profession and practice a dentist, and skilled in the theory and practice of dentistry, having pursued his studies in the science and practice of his said profession in a reputable and standard school and college of dentistry, to wit, the North Pacific Dental College of Portland, Or., from which college, after attendance and study and practice therein for the full term required, and after examination by the faculty of said college, the complainant was awarded and received the diploma of said college as evidence of his learning and skill in said profession, and authorizing him to practice his said profession in all its branches as a graduate of said college from and after the date of said diploma, to wit, May 21, 1909. And your orator further says that during the time since receipt of said diploma the complainant has engaged in the practice of his said chosen profession in its various branches, and in the cleansing, care, and repair of teeth, and the manufacture and fitting and adjustment of artificial teeth, * * * and that he has no other available means whatever of maintenance or support."

It is further averred that the prosecuting attorney for King county, Wash., has filed an information in the superior court of that state, charging—

"the complainant herein with a crime against the laws of the state of Washington, to wit, with practicing dentistry in the city of Seattle, in said state, without having a license so to practice from the state board of dental exam-

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

iners, and by said information caused the arrest and imprisonment of complainant, and said cause is now pending in the said superior court; complainant being at present released from custody on bail pending the hearing, trial and judgment in said cause.

"And, further complaining, your orator says that, since his said arrest, imprisonment, and release on bail, the complainant under the advice of his counsel has continued in the practice of his profession, and in order to maintain and support his family is compelled so to follow and practice his said profession, and without the aid and support derived from such practice the complainant and his family will be wholly without means of support, and will be wholly dependent upon the charity of friends or the public; that the defendants have threatened to have complainant again arrested and imprisoned, unless he desists from the practice of dentistry, and to continue so to arrest and imprison him as often as he shall engage in such work, and so to compel him to abandon his profession, and thereby destroying the fruits of his college study, and education and life work, and leave him helpless in the discharge of his duties to his family and as a citizen.

"And your orator further complains and says that the information and arrest of complainant aforesaid, and which defendants are threatening to repeat, are brought under the pretended authority of the statutes of Washington, to wit, sections 8412 to 8425, both inclusive, of Remington's Code of said state of Washington, and particularly of sections 8416, 8421, and 8425 thereof, and that said statute is repugnant to the Constitution of the United States and to the Fourteenth Amendment thereof, and that by enforcing said statute complainant is deprived of his liberty and of his property without due process of law.

"And your orator further says that the aforesaid trial of complainant in the state courts will require long periods of time in the presentation, trial, and determination of complainant's defense, and that, whether the judgment therein shall be favorable or adverse to complainant, the cause will proceed by appeal or writ of error to the Supreme Court of the United States, and that pending such procedure through long periods of time complainant will be prevented from practicing his profession, unless by relief granted by this court, and will thereby suffer great and wholly irreparable loss; that complainant has tried to comply with the requirements of said board of dental examiners, and therein has taken three several examinations and paid each time the required fee of $25, but that said board has each time arbitrarily refused to grant complainant a license, and so without assigning or giving any reason therefor, and without giving to complainant any record or information as to the result of his examination, other than to inform him that he had not passed; that by reason of the unlimited and arbitrary power granted to said board by said statute, and exercised by them thereunder, and by the arrest and imprisonment of complainant by defendants pursuant thereto, complainant is deprived of his liberty and property without due process of law."

Defendants have answered, and, while denying complainant's conclusions, admit the material allegations of fact in the complaint, and aver that—

"plaintiff's bill of complaint depends entirely upon the question of the constitutionality or unconstitutionality of said sections of Remington's Code of the State of Washington, and that said sections are constitutional."

The sections referred to are sections 8412–8425, inclusive, and particularly sections 8416, 8421, and 8425, of Remington & Ballinger's Code of the state of Washington. The pertinent provisions of the chapter of the Code regulating dentistry are as follows:

"Sec. 8412. A board of dental examiners, consisting of five practicing dentists, is hereby created, whose duty it shall be to carry out the purposes and enforce the provisions of this chapter."

274 F.—43

Section 8413 provides that the members of the board shall be appointed by the Governor, and regulates their terms of office and the portion of the state from which they shall be appointed. Section 8414 gives a form of oath administered to the board. Section 8415 provides:

"The board shall choose one of its members president and one secretary thereof, and it shall meet at least twice each year, in May and November, or oftener at the call of the president or secretary. * * *"

Section 8416 provides:

"Any person or persons seeking to practice dentistry in the state of Washington, or to [own], operate or cause to be operated, [or to run or manage] a dental office or place for the practice of dentistry in the state of Washington after the passage of this act shall file his or her name, together with an application for examination, with the secretary of the state board of dental examiners, and at the time of making such application shall pay to the secretary of the board a fee of twenty-five dollars, and to present him or herself at the first regular meeting thereafter of said board to undergo examination before that body. No person shall be eligible for such an examination unless he or she shall be of good moral character and shall present to said board his or her diploma from some dental college in good standing and shall give satisfactory evidence of his or her rightful possession of the same: Provided, this section shall not apply to persons engaged in the practice of dentistry at the time of the passage of this act who are bona fide citizens of the state of Washington. All persons successfully passing such examinations shall be registered as licensed dentists in the board register as hereinafter provided, and also receive a certificate, said certificate to be signed by the president and secretary of said board and in substantially the following form, to wit:

" 'This is to certify ——— is hereby licensed to practice dentistry in the state of Washington. This certificate must be filed for record in the office of the auditor of any county in which the party holding such certificate desires to practice, and it is unlawful for him (or her) to practice dentistry in any county in which said certificate is not filed for record.

" 'Dated at ——— this ——— day of ———, A. D. 190—.' "

This section, as well as sections 8421 and 8424, was held unconstitutional as to "owning, running or managing" a dental office in State v. Brown, 37 Wash. 97, 79 Pac. 635, 68 L. R. A. 889, 107 Am. St. Rep. 798.

Section 8417 defines the rights conferred by the certificate, and provides:

"* * * Any person failing to pass the first examination successfully may demand a second examination at a subsequent meeting of said board, and no fee shall be charged to [for] said examination: Provided, that the second examination is taken before the expiration of one year."

Section 8418 requires admitted dentists to register with the board. Section 8419 provides that persons practicing dentistry shall display, conspicuously, the names of all employees. Section 8420 provides for the recording of the certificates issued by the board with the county auditor. Section 8421 provides:

"Any person who, as principal, agent, employer, employee or assistant, who in any manner whatsoever shall practice dentistry or who shall [own, run] operate or cause to be operated, [or manage], a dental office or headquarters in the state of Washington without having first filed for record and had recorded in the office of the auditor of the county wherein he shall so practice or do such act, a certificate from said board of dental examiners as herein provided, shall be deemed guilty of a misdemeanor, and upon conviction shall

be fined in any sum not less than fifty dollars, nor more than two hundred dollars, or be confined for any period not exceeding six months in the county jail for each and every offense: Provided, the foregoing provisions of this section shall not, prior to the tenth day of July, 1901, apply to any person who shall be practicing dentistry in this state at the time of the passage of this act and whose name shall be registered under the provisions of this act in the records of said board. After said tenth day of July, 1901, all the provisions of this section shall apply to all persons whomsoever. All fines recovered under this act shall be paid into the common school fund of the county in which the conviction is had."

Section 8422 makes the auditor's certificate of no record of the board's certificate prima facie evidence against an accused of want of authority to practice dentistry. Section 8423 regulates the handling of fees charged for examinations, the compensation of the members of the board and related matters. Section 8424 provides:

"All persons shall be said to be practicing dentistry within the meaning of this chapter who shall contrary to this act for a fee or salary or other reward paid either to himself or to another person for operations or parts of operations of any kind, treat diseases of lesions of the human teeth or of jaws or correct malpositions thereof, [or who shall own, run or manage a dental office or department] in the state of Washington, without registering and procuring the licenses as herein provided."

Section 8425 charges the prosecuting attorney with the duty of attending to prosecutions under the act.

No claim is made that the practice of dentistry is not a proper subject for legislative regulation under the police power of the state, in the interest of public health. The complaint is that there has been no legislative regulation of the practice of dentistry, but merely an attempt on the part of the Legislature to delegate to the board of dental examiners the regulation of the practice of dentistry.

In State ex rel. Smith v. Dental Examiners, 31 Wash. 492, 72 Pac. 110, this law was attacked under the state Constitution upon other grounds and upheld. The petitioner in that case did not hold a diploma from a dental college. The Supreme Court, by upholding the validity of the statute in that decision, held the requirement of a diploma from such a college a reasonable exercise of the police power. To the same effect was the unreported decision of Judge Neterer (filed September 23, 1915) in Re Francis Stephen Medcraf, which was affirmed in Medcraf v. Hodge, 245 U. S. 630, 38 Sup. Ct. 63, 62 L. Ed. 520.

The issue at bar, concisely stated, is the inoperative effect of the provision of the dental act requiring the holder of a diploma to present himself at a meeting of the dental board "to undergo examination before that body." In Re Thompson, 36 Wash. 377, 78 Pac. 899, 2 Ann. Cas. 149, the validity of this law was again before the Supreme Court of this state. In disposing of the question, and upholding the constitutionality of the law, the court held:

" * * * No power of legislation is conferred by the act upon the dental board, unless it may be said that the rules which the board have adopted, or may adopt, are arbitrary and unauthorized. There is nothing in the record before us to indicate that the dental board have adopted any rules, arbitrary or otherwise; but assuming that the board have adopted some rules—as they certainly must, in order to properly determine the good character of the ap-

plicant and the good standing of the college issuing his diploma, and to conduct the examinations upon subjects reasonably required in that profession—we must assume in this proceeding that such rules are reasonable and within the scope and purview of the act. That the board may adopt unreasonable, unwarranted, or purely arbitrary rules for the examination of applicants cannot be presumed to defeat the act. Unless the act itself is void, arbitrary or void rules, made without authority of the act, cannot render it so. The remedy of petitioner for an abuse of the powers of the dental board is not an attack upon the act creating the board, but must be found in some appropriate proceeding to review the conduct of the board." 36 Wash. at page 379, 78 Pac. at page 900, 2 Ann. Cas. 149.

The court, in so deciding, based its ruling entirely upon Ex parte Whitley, 144 Cal. 167, 77 Pac. 879, 1 Ann. Cas. 13; which decision, in turn, was decided upon authority of Dent v. West Virginia, 129 U. S. 124, 9 Sup. Ct. 231, 32 L. Ed. 623. The Washington court, in the above decision, recognizes that there must be some rules to "properly * * * conduct the examinations upon subjects reasonably required in that profession." The court evidently assumed that the board had adopted such rules, and that they were reasonable rules, and, inferentially, that they had followed such rules, and, further, that they could be depended upon to continue to do so. This appears to us to be a non sequitur.

The court made the further deduction that no legislative power was conferred by the act, "unless it may be said that the rules which the board have adopted, or may adopt, are arbitrary and unauthorized." Other than as shown above, the court does not discuss or dispose of the question of whether or not the terms of the statute purported to clothe the board with power under which it "may adopt" arbitrary rules.

The question of whether arbitrary power is included in the terms of a statute is not to be determined by ascertaining whether arbitrary action has been had under it, else we would be compelled to conclude in one case that arbitrary power had been conferred by a statute because arbitrary action was taken under it, and in another that arbitrary power had not been conferred by a statute, because, forsooth, in the particular case considered, there had been no arbitrary action under it. The power would be conferred to make rules, if at all, whether the rules were good or bad. If the rules were bad, it would be an abuse by the board of the power conferred, and not want of power to make rules.

In the Dent Case, supra, the West Virginia statute did not require—as the Washington statute does—that the applicant for license to practice should have a diploma from a dental college in good standing and be examined, in addition thereto, by the board, but required that the applicant for license to practice should have practiced medicine in the state continuously for 10 years or be a graduate of a reputable medical college, or be examined by the board, and "if upon full examination, they find him qualified to practice medicine in all its departments, they, or a majority of them shall grant him a certificate to that effect." The petitioner in the Dent Case was not a graduate from a reputable college, as found by the board. He had not practiced 10 years, and he did not submit himself for an examination by the board.

In the case now before this court, it is admitted by the answer that the petitioner holds a diploma from a reputable and standard school of dentistry. The answer admits petitioner's allegation that petitioner tried to meet the requirements of the state board of dental examiners, and took examinations three several times, but denies that the board arbitrarily refused to license petitioner to practice dentistry. Petitioner is 38 years of age, and graduated from a reputable dental college in 1909, and holds a diploma therefrom. Since his graduation he has practiced his profession. Under such circumstances, it is hard to reconcile the admission that the dental college from which he graduated was a reputable and standard dental college with the allegation that the refusal to grant him a license was not arbitrary. The facts admitted tend to defeat the conclusion alleged.

The most important distinction between the Dent Case and the one under consideration is that in the West Virginia statute there was something to guide the board of examiners in the course to be pursued by it in the examinations. This, to some extent was pointed out, as shown above, for the act provided that the board "shall examine him as herein provided, and if upon full examination, they find him qualified to practice medicine in all its departments, they, or a majority of them, shall grant him a certificate to that effect." 129 U. S. at page 116, 9 Sup. Ct. at page 232, 32 L. Ed. 623. This statute, to a limited extent, laid down a rule of action for the board to follow, and rendered the question of whether the board had, in a given case, obeyed such rule, capable of proof. They were commanded thereby to examine the applicant in all the departments of medicine, and further commanded to find if he has qualified in such departments, and further commanded, if they so found him, to certify to that effect.

There are no such directions in the Washington statute now before the court. Aside from the requirement of eligibility for examination— that is, the right to be examined—all that is commanded is that "all persons successfully passing such examination shall be registered as licensed dentists," and the form of the certificate provided in the Washington law does not certify that the holder is qualified in any respect, nor does it certify anything save that the holder is licensed to practice dentistry.

The statute contains no regulation whatever covering the matter of said examination, save the preliminary question of eligibility of the applicant for examination; that is, the right to demand an examination depends upon the applicant's being of good moral character, presenting a diploma from a dental college in good standing, and giving satisfactory evidence of his or her right to the possession of the same. It seems to have been assumed, rather than decided, in Re Thompson, 36 Wash. 377, 78 Pac. 899, 2 Ann. Cas. 149, that the statute contemplated an examination by the board after determining whether the applicant was of good moral character and had a diploma from a dental college in good standing. This interpretation of the meaning of the state statute by the Supreme Court of this state is binding upon this court.

In addition to the foregoing, defendants have cited and rely upon the following cases:

Watson v. Maryland, 218 U. S. 173, 30 Sup. Ct. 644, 54 L. Ed. 987. The question before the court in that case was different from that here presented. It was whether the equal protection of the law guaranteed by the Constitution had been denied by reason of an unreasonable classification.

In Reetz v. Michigan, 188 U. S. 505, 23 Sup. Ct. 390, 47 L. Ed. 563, the question considered was whether judicial power had been conferred by the statute on the board of dental examiners. There was no question of the delegation of legislative power. The further question was raised in that case of due process—whether it was necessary to notify the applicant and give him a hearing on whether his tendered evidence of former registration was sufficient.

Rogers v. Jones, 214 U. S. 196, 29 Sup. Ct. 635, 53 L. Ed. 965, was a suit for the removal of a cloud on title to land.

State v. Littooy, 52 Wash. 87, 100 Pac. 170, 17 Ann. Cas. 292, was a case arising under the present law, but the question involved was as to the validity of the requirement of a diploma from a dental college as a prerequisite for an examination for a license to practice dentistry, although there was no such college in the state of Washington.

In State v. Sexton, 37 Wash. 110, 79 Pac. 634, the constitutionality of this act was again upheld, but solely upon the authority of State ex rel. Smith v. Board of Dental Examiners, 31 Wash. 492, 72 Pac. 110, and In re Thompson, 36 Wash. 377, 78 Pac. 899, 2 Ann. Cas. 149.

In State ex rel. Brown v. Board of Dental Examiners, 38 Wash. 325, 80 Pac. 544, the court held that the questions and answers in an examination by the dental board were not admissible in court; that the court had no power to review the action of the board, unless it be arbitrary and fraudulent to the extent of being a refusal to exercise its discretion. The present question was not discussed by the court, and presumably not considered.

In Brown v. State, 59 Wash. 195, 109 Pac. 802, the constitutionality of the act was again before the court, and it was held to be no longer an open question, upon authority of the cases already noticed.

In Wilkins v. State, 113 Ind. 514, 16 N. E. 192, the dental examining board statute was not set out. The attack on the law was upon grounds other than those now being considered, being because the statute authorized the Dental Association, a corporation, to select the members of the board of examiners, and because the board were invested with judicial, not legislative, functions. Enough appears in the decision to show that it was not an uncontrolled power or discretion with which the board was clothed. It would appear from the language of the decision that the statute defined the qualifications entitling one to practice dentistry, for, among other things, the court says:

"* * * As we have seen, the Legislature may prescribe the qualifications of those permitted to practice the profession. The board of examiners established under the law is the lawfully constituted authority, and from it the certificate required by law must be obtained. The Legislature, as the law-making power, has authority to prescribe the method of procedure. Its

authority does not end with declaring what qualifications he who enters upon the practice of that profession shall possess. As it has plenary power over the whole subject, it alone must be the judge of what is wise and expedient, both as to the qualifications required, and as to the method of ascertaining these qualifications." 113 Ind. at page 516, 16 N. E. at page 193.

In State v. Creditor, 44 Kan. 565, 24 Pac. 346, 21 Am. St. Rep. 306, the statute before the court authorized all those in the state engaged in the practice of dentistry at the time of the passage of the act to continue such practice, but required that any one desiring to enter such practice after the passage of the act should present to the board for examination a diploma, which, if found valid by the board, entitled the holder to a license. The attack on the law was made because of claimed class discrimination between those practicing before the passage of the act and those seeking to enter the practice afterwards.

The case of People v. Griswold, 213 N. Y. 92, 106 N. E. 929, L. R. A. 1915D, 538, is to substantially the same effect.

State v. Vandersluis, 42 Minn. 129, 43 N. W. 789, 6 L. R. A. 119. This was a case where the Minnesota statute creating a board of dental examiners, attacked, was held valid by the court. The attack was made because of the requirement that the applicant for examination have a diploma from a dental college in good standing. The court says of the statute:

"It then goes on to prescribe the manner, extent, and subjects of the examination." 42 Minn. at page 132, 43 N. W. at page 790, 6 L. R. A. 119.

These are the very things lacking in the Washington act.

In Eastman v. State, 109 Ind. 278, 10 N. E. 97, 58 Am. Rep. 400, the statute is not set out in the decision, but its requirements are indicated by the following from the opinion:

"* * * The statute does not require the clerk to sit in judgment upon the sufficiency of the application for a license; for the affidavits prescribed, and the diploma required, constitute the evidence upon which the clerk must act. The diploma and affidavits compel him to grant the license, and it is therefore not possible to regard his duty as a judicial one. Flournoy v. City of Jeffersonville, 17 Ind. 169; Betts v. Dimon, 3 Conn. 107; State v. Doyle, 40 Wis. 183." 109 Ind. at pages 281, 282, 10 N. E. at pages, 98, 99, 58 Am. Rep. 400.

There is no regulation in the statute under consideration concerning the subjects upon which the applicants shall be examined; no regulation as to the percentages required to pass the examination; no regulation as to whether the examination shall be confined to the theory of dentistry; whether written, or oral, or whether the applicant's proficiency shall be determined by requiring him to demonstrate his skill with the tools and materials of his profession, or whether the examination may include both methods. In fact, the letter of the statute does not even command or direct that the examination shall relate to his qualifications to practice dentistry. There is no requirement even that the board shall find the applicant competent and qualified in all or any subjects related to his profession, and, for that matter, no requirement that they shall find him qualified as to subjects corelated or unrelated to his profession. No tests for the determination of his fitness, either appro-

priate or unappropriate, are provided. No provision is made for the keeping of any records—either records made by the board or made in the process of examination by the applicant; neither a record for the purpose of review, in case of dissatisfaction or complaint, nor as a precedent and guide for future examinations.

Section 8415 does provide that "three members of said board shall constitute a quorum and the proceedings thereof shall at all reasonable times be open to public inspection." This language does not contemplate a record of the proceedings, but that the meetings at which the examinations are held, and the proceedings during and at such meetings shall be open at all reasonable times. The board is not required to give the applicant any notice of his standing; nor is it required to inform him whether he has passed or not, or why he has not passed. The board is not even charged with the duty of making regulations, uniform or otherwise, as to examinations, which would insure, in some degree, uniformity of treatment accorded applicants and the public.

There is no restraint in the statute preventing one applicant's passing an examination solely on subjects and by methods not mentioned to another, also passed and licensed by the board, and nothing to prevent one applicant's being passed and another rejected, although the latter had admittedly passed as good, or better, examination. The only regulation as to the examination, not already pointed out, is that the board shall meet at least twice each year in May and November, and that 30 days' notice shall be given by publication in at least four newspapers. The place of holding the examination is not provided by the statute.

If a record were made up of the proceedings of the board in a given case, and the same were brought to a court or other authority for review, the statute affords no rule or guide that would enable the reviewing tribunal to determine whether or not right or wrong had been done. This would simply result in making such court or reviewing board a supervising autocrat, to arbitrarily determine the claims of the applicant and substitute its arbitrary determination for the arbitrary determination of the board.

This statute, as interpreted in the Thompson Case, supra, is not a lawful exercise of the police power, but, under the guise of a police regulation, on its face clothes the board with arbitrary, autocratic, and undefined powers, and is therefore, itself, an unwarranted and arbitrary interference with the petitioner's constitutional right to carry on a lawful business. The case is not one of the board's abuse of powers lawfully conferred; but the abuse and wrong consist in undertaking to confer unlimited powers. Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169.

The upholding of this statute would, in this particular, make the government one of men, rather than law, for there is no curb or limit in the law to the exercise of the will of the board. If its members will that one be licensed and another not, it is so. It is not law that one should hold the means of living by such a tenure, at the will of another. Yick Wo v. Hopkins, 118 U. S. 356 at page 370, 6 Sup. Ct. 1064, 30 L. Ed. 220.

All that the letter of this law requires is that the board shall examine the applicants presenting themselves for that purpose, and even that duty is not expressly commanded. The letter of the law goes no further than to infer that the board shall examine the applicants; how, or for what, there is nothing to indicate. There is nothing in the letter binding or defining the character, degree, or particulars, or qualifications, for which the applicant shall be tested. Nor, for that matter, does the letter of the law command that it is the qualifications of the applicant to practice dentistry that the board is charged with the duty of investigating. Such duty must be inferred. Being so unaided by the letter of the law, its spirit is so elusive that it may be all things to all men, or rather anything to any man, which is only to say that arbitrary power is conferred, and that the applicant, in appearing for examination, subjects himself to the mere favor, spite, whim, caprice, or will of the board members. If so, our vaunted liberty is, indeed, shrunk to narrow compass.

Considering the unbridled power which is attempted to be conferred by the statute, the logic of the Washington court in the later cases of Seattle v. Gibson, 96 Wash. 425, 165 Pac. 109, and State ex rel. Makris v. Pierce County, 193 Pac. 845, is more satisfying to the reason—not only because it is of later pronouncement, but because of its inherent strength—than what is said by the same court in the Thompson Case above quoted. In the Gibson Case, the court was considering a statute providing for the licensing of pharmacists, which reads:

"The city comptroller shall report the petition to the city council which shall refer the same to the license committee, which committee shall consider such petition and may, in its discretion, investigate any of the matters set forth therein, and report its findings and recommendations thereon to the city council, and if said committee recommends that said petition be granted, shall accompany such recommendation with a proposed ordinance granting the license petitioned for." 96 Wash. at page 428, 165 Pac. at page 110.

Of the foregoing the court says:

"It is plain from this provision of the ordinance that the license committee is vested with discretion to report either favorably or unfavorably to the city council. If this discretion is exercised favorably, and a recommendation that a license be issued is made by the license committee, it shall report an ordinance granting the license petitioned for. The ordinance also provides that every license shall be granted by ordinance of the city; that is, before an applicant for a license may receive the same, a special ordinance must be passed granting a special privilege, and the passage of such ordinance rests wholly in the discretion of the city council. *The ordinance in question here makes no provision for determining the qualifications of an applicant.* It does not require the license committee, to whom the petition is referred, to investigate any of the facts stated in the petition of the applicant. The committee may investigate or not as its discretion dictates. In short, the ordinance leaves to the license committee the authority arbitrarily to grant or reject a petition for a license to operate or conduct a drug store and pharmacy. *This discretion is purely arbitrary under the ordinance, because no standard of qualifications, nor rule, is fixed upon which an investigation may be made.* The ordinance recites that the committee may, in its discretion, investigate any of the matters set forth in the petition, and if it may investigate these matters in its discretion, it may not investigate them at all, and may report according to its desire." 96 Wash. at pages 428 and 429, 165 Pac. at page 111. (The above italics are those of this court.)

In State ex rel. Makris v. Pierce County, supra, the commissioner of public safety at Tacoma had revoked the license of plaintiff to conduct a soft drink and candy business and threatened to close his place. The ordinance for licensing such a business provided that, after application, the city commissioner should—

"inspect, or cause to be inspected, the premises where such business is to be conducted. If the premises are found to be in a sanitary condition and to comply in all respects with the provisions of the health and food ordinances of the city of Tacoma relating thereto, and if the premises conform to the building regulations and in no way menace the peace and good order of the community, said commissioners or their representatives shall recommend to the City Clerk that such license be issued."

The ordinance further provided:

"The license of any business mentioned in this section may be revoked by the commissioner of public safety *in his discretion for disorderly or immoral conduct or gambling on the premises, or whenever the preservation of public morality, health, peace or good order shall in his judgment render such revocation necessary.* Such revocation shall be subject to appeal to the city council, to be prosecuted by filing a written notice with the council within ten days after the revocation. Upon receipt of such appeal the council shall appoint a day for hearing the appeal, giving the appellant at least three days prior notice in writing thereof. The decision of the council shall be final." 193 Pac. at page 846. (The italics are those of this court.)

Under the latter provision the commissioner of public safety assumed to revoke plaintiff's license because in his opinion "the business, *as conducted by Makris, had become a menace to 'the preservation of public morality, health, peace and good order.'*" 193 Pac. at page 846. In disposing of the question of the constitutionality of the ordinance, the Washington court says:

"The argument here made in behalf of Makris is, in substance, that the effect of the provisions of the ordinance authorizing the revocation of the license is to place in the hands of the commissioner of public safety, and in turn in the hands of the city council upon appeal from the commissioner, the arbitrary power, *uncontrolled by any prescribed rule of action, to effectively decide who may and who may not engage in and carry on the manifestly lawful business of selling soft drinks and candy in the city.* As we read the ordinance such is the meaning of its terms. *It may be that the authority* to revoke the license *because* of the permission by the licensee, or 'gambling on the premises,' is a sufficient prescribing of a cause for revoking the license, and that the revocation provisions of the ordinance in so far as that cause alone is concerned might be upheld, if that specified cause for revoking the license be sufficiently separable from the other provisions of the ordinance, to stand alone.

"That, *however, is not the question before us.* That is not claimed as the cause for revoking this license. There is no other specifically prescribed cause for revoking the license or specifically prescribed rule of action which limits or controls the commissioner or the city council in deciding the question of revoking the license. This means that the commissioner, and in turn the city council, may *according to their own notions of what is a menace to 'the preservation of public morality, health, peace or good order'* in each *particular case,* decide *who may and who may not engage in business of this character* in the city. In other words the commissioner is left to determine for himself, *not only what acts may have been committed by the* licensee, but *also whether or not such acts are 'disorderly or immoral,' or are a menace to the 'preservation of public morality, health, peace or good order,'* warranting revocation of the license. Manifestly, upon appeal to the city council,

that body is not, by the terms of the ordinance, controlled by any more specifically prescribed rule of action, but, like the commissioner, is a law unto itself in each particular case when the question of revocation of a license comes before that body.

"Our decision in Seattle v. Gibson, 96 Wash. 425, 165 Pac. 109, is practically decisive of this case in principle, in favor of Makris, though the license ordinance there involved sanctioned a somewhat *plainer usurpation of arbitrary power than does this ordinance, in that it made no attempt whatever to prescribe any rule touching the question of who should be granted a license and who should be refused a license* to conduct a drug store. It is true, in that decision particular mention is made of the fact that the license might, under the terms of the ordinance, be granted or refused without even an investigation or hearing touching the merits of the application therefor; but the law invoked in support of our conclusion that the ordinance was void, in that 'this *discretion is purely arbitrary under the ordinance, because no standard of qualifications, nor rule, is fixed upon which an investigation may be made*' (using the words of the decision), citing and quoting from Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, Los Angeles v. Hollywood Cemetery Ass'n, 124 Cal. 344, 57 Pac. 153, 71 Am. St. Rep. 75, State v. Mahner, 43 La. Ann. 496, 9 So. 480, and State ex rel. Garrabad v. Doring, 84 Wis. 585, 54 N. W. 1104, 19 L. R. A. 858, 36 Am. St. Rep. 948, is, we think, decisive of this case in favor of Makris. All of those decisions were rested upon the principle that an ordinance which authorizes the issuing or withholding of a license to engage in a lawful business, that is a business which within itself is ordinarily perfectly lawful, and committing to any officer or set of officers the *power to decide according to their own notions in each particular case, the question of the propriety of issuing or withholding a license therefor, and thus deciding who may and who may not engage in such business, is authorizing the exercise of arbitrary power in violation of the guaranty of the Fourteenth Amendment of the Constitution of the United States that* 'no state shall * * * deny to any person within its jurisdiction the equal protection of the law.' In section 12 of article 1 of our state Constitution we find the same guaranty, in substance, as follows: 'No law shall be passed granting to any citizen, class of citizens, or corporation, other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations.' Our decision in Seattle v. Gibson, supra, and those of the federal and state courts upon which that decision is rested, render it plain that it is sufficient *to render a law or ordinance void in the light of these* constitutional guaranties, if the *prescribed* manner of administering such law or ordinance *results in leaving the question of the propriety of issuing, withholding, or revoking a license to conduct an ordinarily lawful business, and thus the question of who may and who may not engage in such business, to the decision of any officer or set of officers, uncontrolled by any prescribed rule of action.*

"Among the many additional authorities lending support to this view of the law, we note the following: The case of Elkhart v. Murray, 165 Ind. 304, 75 N. E. 593, 1 L. R. A. (N. S.) 940, 112 Am. St. Rep. 228, 6 Ann. Cas. 740, is particularly enlightening and persuasive upon this question. In that case there was involved an ordinance of the city requiring the use on street cars of fenders of a particular make 'or some other fender equally as good, to be approved by the common council or its street committee.' The ordinance was held void because of the uncertainty of the standard prescribed, in that, whether some other fender than that named was equally as good was left to the decision of the city officers. In the course of the opinion Chief Justice Monks, speaking for the court, said: 'The ordinance must contain permanent legal provisions operating generally and impartially upon all within the territorial jurisdiction of such city, and no part thereof be left to the *will or unregulated discretion of the common council or any officer.* If an ordinance upon its face restricts the right of dominion which the owner might otherwise exercise without question, not according to any uniform rule, but so as to make the absolute enjoyment of his own depend upon the

arbitrary will of the city authorities, it is invalid, because it fails to furnish a uniform rule of action, and leaves the right of property subject to will of such authorities, who may exercise it so as to give exclusive profits or privileges to particular persons.' Numerous authorities are then cited in support of this view. The Chief Justice then proceeding, referring to one of the court's prior decisions, said: 'In Bessonies v. City of Indianapolis, supra, at page 197, this court said: "Without any provision as to the location or management of hospitals, the ordinance attempts to make it unlawful for any one to establish or conduct one without a license or permit from the common council and board of aldermen; and *the granting or refusal of the license or permit is not governed by any prescribed rules, but rests in such case in the uncontrolled discretion of the common council and board of aldermen.* It is apparent that, under the ordinance, if valid, the common council and board of aldermen have the power to grant or refuse the license in any given case at their mere pleasure, and that no one can conduct or maintain a hospital within the city, however harmless or beneficial it might be, except by the consent of the common council and board of aldermen. It is not necessary to suppose that the common council and board of aldermen would abuse the power thus assumed by them, to grant or refuse the license as they might think * * * for the public good. It is sufficient to say that, if the ordinance is valid, the common council and board of aldermen have it in their power to grant one person a license, and refuse another, under the same circumstances. No law could be valid, which by its terms would authorize the passage of such an ordinance. The twenty-third section of the Bill of Rights provides that 'the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.' What the Legislature cannot do directly in this respect, it cannot authorize a municipal corporation to do."'" 193 Pac. at pages 846–848. (Italics those of this court.)

The Washington court, in the Makris Case, also considered Portland v. Traynor, 94 Or. 418, 183 Pac. 933, 186 Pac. 54, and found the same difference between the ordinance in question before the Oregon court and the one held invalid by the Washington court in the Makris Case which we have already pointed out between the West Virginia statute, considered in the Dent Case, supra, and the one now before this court. This is shown by the following quotation by the Washington court from the Oregon decision:

"* * * As we construe it, the ordinance in question is certain and definite in its terms. It provides if, upon investigation, *the location 'is found to be suitable for a food establishment, and in proper sanitary condition according to the* ordinances of the City of Portland and the regulations of the United States with reference to plumbing, water supply, ventilation, and cleanliness, the bureau of health shall issue to such applicant a food establishment permit.'" 193 Pac. at page 848. (The italics are those of this court.)

The ordinance, by using the language quoted by the court, laid down a rule of action to be followed by the board (whether sufficient or not, it is not for this court to decide), and, to that extent, it supplied that which is wanting in the dental board statute before us.

It is true that in the Makris Case the Washington court says:

"We do not in our present inquiry take note of decisions which have to do with the granting of licenses for the sale of intoxicating liquors, the maintenance of pool rooms, *the practice of professions,* or entering upon occupations more or less dangerous to others, looking to the personal qualifications of the licensee. As to such licenses there is necessarily involved *some*

*measure of discretion* to be exercised by the officer or body charged with the duty of deciding who may or may not engage in such businesses, professions, or occupations. Such cases do not deal with constitutional rights *so clearly ascertainable* as those drawn in question in this case." 193 Pac. at page 849. (The italics are those of this court.)

Doubtless there is need for clothing with a wider discretion those charged with the duty of determining the qualifications of a person to engage in the professions than of those whose duty it is to act with regard to readily observed and determined physical conditions; nevertheless there are well-known, recognized, and established methods and rules for measuring the storehouses of the mind and the cunning of the hand in the arts, trades, and sciences. There is no right in the Legislature to delegate the exercise of discretion, beyond what is reasonably necessary.

In Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623, the Supreme Court of the United States says:

" * * * It authorizes an examination of the applicant by the board of health as to his qualifications when he has no evidence of them in the diploma of a reputable medical college in the school of medicine to which he belongs, or has not practiced in the state a designated period before March, 1881. If, in the proceedings under the statute, there should be any *unfair or unjust* action on the part of the board in refusing him a certificate, we doubt not that a remedy would be found in the courts of the state. But no such imputation can be made, for the plaintiff in error did not submit himself to the examination of the board after it had decided that the diploma he presented was insufficient." 129 U. S. at pages 124 and 125, 9 Sup. Ct. at page 234, 32 L. Ed. 623. (Italics those of this court.)

This amounts to an assurance that a remedy will be found for wrongs done by such a board.

In State ex rel. Brown v. Board of Dental Examiners, 38 Wash. 325, 80 Pac. 544, the complaint was that the board of dental examiners fraudulently denied a license to practice, not because of petitioner's failing to pass the examination, but because the applicant refused to subscribe to a certain code of ethics presented to him by the board. In this case the court held that it would have been reversible error to have admitted the questions, answers, and other documents relating to the examination, and said:

" * * * The general rule is well established that the courts cannot review the discretion which has by law been vested exclusively in inferior tribunals, and mandamus will therefore not lie to compel the performance of acts or duties which necessarily call for the exercise of discretion on the part of the officer or board at whose hands their performance is required, because the state has, as in this instance, determined upon and specified the officers upon whose *judgment of the questions submitted* to them the state is willing to rely." 38 Wash. at pages 327, 328, 80 Pac. at pages 544, 545. (The italics are those of this court.)

The only criticism of the foregoing is that the statute does not define the questions that are submitted to the board's judgment. The statute simply leaves it to the board to say whether those of good moral character holding diplomas shall or shall not be licensed to practice dentistry. The Washington court further says:

"* * * The action of the court must, in reality, be based upon the assumption that the inferior tribunal has refused to exercise the discretion with which it is clothed, because, if it acts arbitrarily or fraudulently, or through unworthy or selfish motives, or conspires against the rights of individuals, under the law, and therefore against the law itself, it has not strictly, as is frequently said, 'abused its discretion'—a term which is responsible for some confusion of ideas on this subject—but in contemplation of law, it has not exercised its discretion at all, but has sought to substitute arbitrary and fraudulent disposition and determination of the question submitted, for the honest discretion demanded by the law. In such cases the law will, by mandamus, compel the tribunal to act honestly and fairly, or, in other words, *to exercise its discretion*; and, when this distinction is kept in mind, the seeming difficulties which have surrounded this question, and which have caused so much discussion, disappear. But, in the light of the record in this case, these abstract principles are scarcely involved; for, while it is at least theoretically true that there is no wrong without a remedy, there is no allegation of any wrong in the petition in this case upon which the appellant *was denied a hearing.*" 38 Wash. at pages 328 and 329, 80 Pac. at page 545. (Italics those of this court.)

It is well-settled practice in the federal court to admit in evidence the examinations—including questions and answers propounded to and given by immigrants applying for admission to the United States, and the various witnesses in deportation cases (cases in which, not the rights and liberties of citizens are involved, but merely the rights of aliens to enter the United States), in order to determine whether the action and rulings of the officers and boards considering the same have been arbitrary or capricious, and necessarily would it be so if the charge were that fraud was involved, because of the great latitude allowed in cases of the latter character. The decision of the Washington court in the Brown Case, supra, and what is said above, hardly appear to this court to be the full measure of relief which the language quoted from Justice Field's opinion, supra, gives promise. The greatest latitude is, ordinarily, allowed where the purpose or intent with which an act has been done is charged to have been fraudulent—that is, concealed and dishonest; and despite the ruling in the foregoing case, and while we have not the record before us, it would appear that the "questions, answers, and other documents," relating to the examination therein attacked, might reasonably be expected to throw some light upon the intent, motive, and purpose of the board in refusing applicant a license.

While, no doubt, the executive's appointees may formulate rules and regulations supplementing to some extent the law, where authority is expressly conferred so to do, and while the courts are not prone to interfere with the exercise of such discretion, as is shown by the numerous decisions which we have reviewed and considered, it is not consistent with our system of government that the executive shall both make and execute the law. If law be a rule of action, then section 8416 is no law; for, while it undertakes to authorize the board to act—to examine—it gives the board no rule by which to act. In the regulation of such matters, the need of some exercise of judgment and discretion, no doubt, exists, and the line of demarcation, the bounds of such legal discretion, must ever remain difficult of determination.

The board of dental examiners, under this act, from the dental

graduates of good moral character presenting themselves, may simply appoint, as they see fit for any reason, dentists to practice. A power so unconfined and unrestrained as that sought to be conferred by this section authorizes, in no proper sense, the exercise of discretion, but rather the exercise of autocratic and arbitrary power. The part of the statute requiring the examination should be, and is, held inoperative and of no effect.

The temporary injunction prayed for will be issued.

GILBERT, Circuit Judge, and NETERER, District Judge, concur.

---

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes