[No. 20128. *En Banc.* June 14, 1927.]

THE CITY OF SEATTLE, *Appellant,* v. JOSEPH FORD, *Respondent.*[1]

[1] CONSTITUTIONAL LAW (112, 116)—EQUAL PROTECTION OF THE LAW —REGULATION OF TRADE—HAWKERS—LICENSE TAXES. In the exercise of the police power, the legislature may not, under the guise of protecting public interests, arbitrarily interfere with private business or impose unusual or unnecessary restrictions upon lawful occupations; and in a case involving the carrying on of a business not harmful in itself, on private property, the courts will review legislative action and determine whether unnecessary restrictions are imposed upon a lawful occupation or a lawful right.

[2] SAME (112, 116). An ordinance forbidding hawking not only on public streets but on private property, so as to prevent a person from selling merchandise in his own way on his own private property in a manner that does not go to the extent of causing a breach of the peace or create a nuisance, except on payment of a license fee of ten dollars a day, is void as prohibitive and unreasonable (FULLERTON, MAIN and PARKER, JJ., dissenting).

Appeal from a judgment of the superior court for King county, Hall, J., entered February 1, 1926, upon

[1]Reported in 257 Pac. 243.

a trial and acquittal of violating a city ordinance. Affirmed.

*Thomas J. L. Kennedy* and *Hugh R. Fullerton,* for appellant.

*Palmer, Askren & Brethorst,* for respondent.

Tolman, J.—This case originated in a justice court for King county where a criminal complaint was filed charging the defendant (respondent here) with the violation of an ordinance of the city of Seattle. The defendant was there convicted, and appealed to the superior court for King county, where the case was tried on an agreed statement of facts. The superior court held the ordinance invalid as to the particular offense here charged, and by its judgment discharged the defendant. From that judgment, the city has appealed.

The agreed statement of facts sets out the parts of the ordinance involved and the acts charged as constituting its violation, as follows:

"It is agreed that the city of Seattle, plaintiff, is a municipal corporation of the first class of the state of Washington, and that there has been regularly enacted a certain ordinance of said city, being Ordinance No. 48022, of which sections 152, 153 and 245 are as follows:

"Section 152. 'Hawker' Defined: (a) Any person selling or offering for sale any article or thing, except newspapers, within the city of Seattle who shall make a public outcry or give any musical or other entertainment, or ring any bell, or blow any whistle or horn, or shall make any public speech to draw customers or attract notice, whether on any street or other public place or in any vacant lot, enclosure, storeroom or other place, or;

"(b) Any person who shall on any street, avenue, alley or other public place, or in any vacant lot, enclosure, storeroom or other place within the city of

Seattle, make any public outcry or give any musical or other entertainment, or ring any bell or blow any whistle or horn, or shall make any public speech to draw custom or attract notice, or who shall make any demonstration calculated to draw attention to any goods, wares, merchandise, amusement, event or service, at any other place shall be deemed a hawker, within the meaning of this ordinance.

"Section 153. Hawker's License Fee: It shall be unlawful for any person to act as a hawker unless he shall have a license so to do, to be known as a 'Hawker's License.' The fee for such hawker's license shall be, and the same is hereby, fixed in the sum of ten dollars ($10.00) per day; provided, however, that no license shall be issued for the hawking of those articles where a peddler's license is required, unless such hawker shall have also a peddler's license.

"Auctioneers and persons selling property under and by virtue of an order from the court shall not be required to take out a hawker's license.

"Section 245. Penalty: Any person violating or failing to comply with any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine in any sum not exceeding three hundred dollars ($300.00), or by imprisonment in the city jail for a period not exceeding ninety (90) days, or by both such fine and imprisonment.

"That on the 14th day of February, 1925, the defendant, Joseph Ford, was in the employ of the Murray Meat Company in its market located on private property near Pike Place in the city of Seattle. That said market is wholly located upon private property. That it has certain counters fronting on an aisle located inside the market. That the defendant, Joseph Ford, on said date, standing back of the counter and within the boundaries of the private property, attempted to sell to passersby in the market certain T bone steaks by holding them up to the public view and by calling to said passersby in a loud voice: 'Here they are folks; take them away, at 25c for one or two for 45.' That Joseph Ford did not have at said time any license

to act as hawker, as provided by the provisions of Ordinance No. 48022.

"That trial was had before the Honorable John B. Gordon, justice of the peace, on the 9th day of July, 1925, and the defendant convicted, and that thereafter this appeal was regularly taken to the superior court above entitled."

It may be admitted, at the start, that the city of Seattle, by our state constitution (art. XI, § 11), by our statutes and by its charter, is as fully authorized to exercise the police power as any municipality can be, and the power delegated is as ample within its limits as that possessed by the legislature itself. *Detamore v. Hindley*, 83 Wash. 322, 145 Pac. 462.

The respondent advances three reasons why the ordinance should be held invalid, which are, in substance: (1) The license fee is prohibitive in amount and in effect the occupation of hawking is thereby prohibited; (2) it is an unwarranted exercise of the police power in that it prohibits the carrying on of a lawful occupation on private premises; and (3) it unlawfully discriminates in favor of the vendors of newspapers.

We find it necessary to consider only the first and second of these questions.

[1] Perhaps there is no subject upon which a greater number of apparently conflicting authorities can be found; but we think the conflict is more apparent than real and arises largely from the failure to confine the language used in a particular case to the points decided in that case. The courts will go far in sustaining the exercise of the police power for the preservation of the public health and safety, and in so doing private rights in conflict therewith are overridden; but on the other hand, the courts are equally concerned to see that, under the guise of protecting the public, private busi-

ness—especially that carried on upon private property—is not arbitrarily restricted or interfered with. Mr. Tiedeman, in his work on State and Federal Control of Persons and Property, vol. 1, page 4, clearly states the thought we are trying to express, as follows:

"It is to be observed, therefore, that the police power of the government, as understood in the constitutional law of the United States, is simply the power of the government to establish provisions for the enforcement of the common as well as civil-law maxim, *sic utere tuo ut alienum non laedas.* 'This police power of the State extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the State. According to the maxim, *sic utere tuo ut alienum non laedas,* it being of universal application, it must of course be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others.' Any law which goes beyond that principle, which undertakes to abolish rights, the exercise of which does not involve an infringement of the rights of others, or to limit the exercise of rights beyond what is necessary to provide for the public welare and the general security, cannot be included in the police power of the government. It is a governmental usurpation, and violates the principles of abstract justice, as they have been developed under our republican institutions.

"In *Lawton v. Steele* (152 U. S. 133) the Court say: 'The extent and limits of what is known as the police power have been a fruitful subject of discussion in the appellate courts of nearly every State in the Union. It is universally conceded to include everything essential to the public safety, health and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the State may order the destruction of a house falling to decay or otherwise endangering the lives of passersby; the demolition of such as are in the path of a con-

flagration; the slaughter of diseased cattle; the destruction of decayed or unwholesome food; the prohibition of wooden buildings in cities; the regulation of railways and other means of public conveyance, and of interments in burial grounds; the restriction of objectionable trades to certain localities; the compulsory vaccination of children; the confinement of the insane or those afflicted with contagious diseases; the restraint of vagrants, beggars, and habitual drunkards; the suppression of obscene publications and houses of ill-fame; and the prohibition of gambling houses and places where intoxicating liquors are sold. Beyond this, however, the State may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests. To justify the State in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers, is not final or conclusive, but is subject to the supervision of the courts.' "

Our own cases, cited and relied upon by the appellant city, beginning with *Olympia v. Mann*, 1 Wash. 389, 25 Pac. 337, 12 L. R. A. 150, and following on down to *Plumas v. Town of Cosmopolis*, 128 Wash. 697, 223 Pac. 1052, in the main, relate to ordinances establishing fire limits, fire escapes, weights and measures, building ordinances and the like, and fall clearly within the public health and safety rule, or they in-

volve businesses, though of a private nature, which are in themselves injurious and harmful and are therefore prohibitable. None of these cases is at all helpful here.

We have another line of cases cited by the respondent which is perhaps slightly more helpful. Among these is *State ex rel. Schafer v. Spokane,* 109 Wash. 360, 186 Pac. 864, which quotes at length and with approval from *Ex parte Dickey,* 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840, language which is applicable here. The *Schafer* case differentiates between a business carried on upon the public streets and one carried on upon private property, and to that extent it is in point. The cases of *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845; and *Vincent v. Seattle,* 115 Wash. 475, 197 Pac. 618, are not strictly in point, but they indicate that this court is not inclined to permit the right to carry on a private business on private property to be limited or denied, without good reason.

But little would be accomplished by reviewing the authorities from other jurisdictions. Their name is legion. Not one has been called to our attention which can be said to be conclusive. In many, language is used which supports respondent's contention, and in others there is language which, if lifted bodily and applied to the facts we have here, would support an opposite result. We have found no denial of the law as quoted from Tiedeman, and we are convinced that the latter part of that quotation must be applied in this case. True we have said, in effect, that if a state of facts can be assumed which will justify the legislation, the court must assume that such a state of facts exists; but we have never said that, in a case involving the carrying on of a business, not harmful in itself,

upon private property; and that should not be the rule in such a case. Where such private rights exist, the court should review the legislative action and determine whether the legislative body has imposed unnecessary restrictions upon a lawful occupation or a lawful right. McQuillin on Municipal Corporations, vol. III, § 893; *In re Jacobs,* 98 N. Y. 98, 50 Am. Rep. 636; *Ex parte Hayden,* 147 Cal. 649, 82 Pac. 315, 109 Am. St. 183, 1 L. R. A. (N. S.) 184; *State v. Wiggam,* 187 Ind. 159, 118 N. E. 684; *In re Steube,* 91 Ohio St. 135, 110 N. E. 250; *City of Zion v. Behrens,* 262 Ill. 510, 104 N. E. 836, Ann. Cas. 1915A 1057, 51 L. R. A. (N. S.) 562.

[1] And so, coming to the provisions of the ordinance in question, we find that it forbids hawking, not only in the streets, alleys and public places, but on all private property as well. Unquestionably the ordinance is good as to the streets and public places, as we will assume that conditions justify the action of the legislative body in that respect. It might be that if hawking on private property closely adjacent to the public streets was forbidden, we might see in such a provision a reasonable exercise of the police power as tending to prevent the collection of crowds upon the streets and sidewalks about the open door of the place where the hawking was going on, or some similar obstruction to traffic or interference with the public safety. But that is not the question now before us. Every one has a natural right to sell his own merchandise on his own private property, in his own way, to all who come there to buy; and if his manner of selling offends, those so offended may stay away. Self-interest would seem to be the only regulation needed in such cases. If, however, the hawker disregards his own self-interest and goes to the extent of causing a breach of the peace or creating a nuisance, there are

other laws under which he can be punished or the nuisance abated.

We are constrained to hold that, as to what the ordinance defines as hawking on private premises, the city in its exercise of the police power may, at the most, only reasonably regulate; and that the license fee of ten dollars per day, which appears to bear no relation to the cost of supervision and regulation, is excessive and will amount to a prohibition in many, if not in most, cases.

The judgment of the trial court was right and is affirmed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and HOLCOMB, JJ., concur.

PARKER, J. (concurring in result)—I am of the opinion that this ordinance is manifestly directed only against "public outcry etc." made for the purpose of *attracting the public generally* and thereby "draw custom;" that is, only public outcry reaching the public generally beyond the limits of private property upon which it may be made, and public outcry made in a public place reaching the public generally. I do not think the ordinance licenses or regulates any outcry incident to the sale of goods upon private property except when such outcry is intended to reach the public generally beyond the limits of such private property. It is not shown in this case that the outcry reached or was intended to reach the public generally or anyone other than persons in the private market owned by respondent's employer. I concur in the affirmance of the judgment of the superior court upon the ground that the respondent has not violated the ordinance.

I am of the opinion that the ordinance is not unreasonable either in its regulation or as to the amount of the license fee which it exacts, in view of the power

of the city to license for purpose of regulation as well as for purpose of revenue.

FULLERTON, J. (dissenting)—I am not persuaded that the ordinance here in question is unreasonable, or that the license fee exacted is excessive. I therefore dissent.

MAIN, J., concurs with FULLERTON, J.