[No. 21091.   Department Two.   December 10, 1928.]

E. L. BROWN, *Respondent,* v. THE CITY OF SEATTLE *et al., Appellants.*[1]

*Thomas J. L. Kennedy* and *Hugh R. Fullerton,* for appellants.

*Wright, Froude, Allen & Hilen,* for respondent.

[1]Reported in 272 Pac. 517.

204

BEALS, J.—April 13, 1925, the council of the city of Seattle passed an ordinance numbered 48711 and entitled:

"AN ORDINANCE RELATING TO, and providing for, the inspection of animal carcasses and meats intended for human consumption; regulating the sale of such meats and of poultry and game; providing for the detailing and bonding of inspectors; defining offenses, prescribing penalties, and repealing all ordinances in conflict herewith;"

which ordinance was, on April 22, 1925, approved by the mayor and became effective thirty days thereafter. Sections 17 and 21 of this ordinance read as follows:

"Section 17. It shall be unlawful for any person to sell meat intended for human consumption within the city without first obtaining a permit so to do from the commissioner of health. Any person desiring such a permit shall first make written application therefor to the commissioner of health, setting forth therein the name of such person and the location, by street and number, of the shop or plant where such person desires to sell such meat. The commissioner of health shall thereupon cause such shop or plant, with all the fixtures and appliances connected therewith, or to be used therein, to be carefully inspected, and if said shop or plant fully complies with the rules and regulations as prescribed by ordinances of the city of Seattle relating to health and sanitation, the said commissioner of health shall, if he be satisfied that the applicant be responsible and trustworthy, issue to said applicant, free of charge, a numbered permit in accordance therewith."

"Section 21. It shall be unlawful for any person within the city to sell any meat, poultry or game, intended for human consumption therein, from any shop, or for any shop to keep open for business, or to permit any shop to keep open for business, or to receive at any shop, any such meat, poultry or game, or for any restaurant to receive any such meat, poultry or game on

any day except between the hours of seven o'clock a. m. and six o'clock p. m.''

Plaintiff instituted this action, alleging in his amended complaint, dated May 11, 1926, that he was then, and for several years prior thereto had been, conducting a retail meat business in the city of Seattle; that § 17 of Ordinance No. 48711, *supra,* is illegal and void, in that it attempts to vest in the commissioner of health the authority to arbitrarily determine the persons entitled to receive the permit provided for in this section; that a considerable portion of the trade of his meat market consisted of sales made after six o'clock in the afternoon, and that the defendants were threatening to enforce against him the provisions of the ordinance above referred to, and close his shop, if he kept the same open after that time.

Plaintiff further alleged that § 21 of the ordinance is unreasonable, arbitrary and void, and that no plain, speedy or adequate remedy at law was available to him; he therefore prayed that the defendants be enjoined from using the provisions of § 21 of the ordinance as the basis for proceedings against him.

Defendants addressed certain motions to this amended complaint and filed a demurrer thereto, and, after these were denied and overruled, respectively, answered. The trial resulted in findings of fact and conclusions of law in plaintiff's favor, the trial court being of the opinion that §§ 17 and 21 of Ordinance No. 48711 are unconstitutional and void. Judgment was entered in favor of the plaintiff, enjoining and restraining defendants from closing or attempting to close plaintiff's business, and

''. . . from in any way preventing plaintiff from continuing to operate his retail meat market in the city of Seattle after six o'clock p. m. and before seven o'clock a. m. of any day.''

Defendants, having duly excepted to the rulings of the trial court in favor of plaintiff and to the entry of the judgment, appealed to this court.

The ordinance in question is clearly regulatory, and not a revenue ordinance. This at the outset differentiates the case at bar from those cases in which certain ordinances, which were manifestly passed as revenue measures, have been held valid.

It is also true that the business of selling meat does not fall within the classification which includes pool halls, dance halls, card rooms and similar places of amusement which have been held to be businesses which require strict regulation and supervision because of the possible harm to the public at large, which may result from the operation of such places unless they are strictly regulated and supervised.

It may also be stated that this court has repeatedly decided, and it is unquestionably the law of this state, that in proper cases and within reasonable limits the police power of a city extends to the regulation of businesses conducted upon private property.

Respondent contends that the portion of § 17, *supra,* to the effect that the commissioner of health of appellant city shall, if he be satisfied that the applicant for a permit to sell meat "be responsible and trustworthy," issue a permit, is unconstitutional and void, for the reason that it purports to delegate to the commissioner of health the right to determine the responsibility and trustworthiness of each applicant, without fixing any standard by which these qualities may be determined, and that therefore the matter is left to the arbitrary judgment of the commissioner.

In support of the validity of § 17, appellants cite the opinion of this court in the case of *Town of Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502, in which an

ordinance providing for and regulating the issuance of peddling licenses was upheld.

The ordinance in question in that case provided that ". . . the town clerk shall, unless he has good reason to believe such applicant to be dishonest or immoral and that he desires such license to enable him to practice some dishonest or immoral act, issue to said applicant a license."

The court held that the ordinance could be sustained on the ground that it was a revenue measure, but goes on to discuss the provision above referred to and holds the same valid, as it does not purport to grant to the town clerk arbitrary power to grant or refuse the license in his discretion, but on the contrary binds him to grant the license to every applicant, unless he finds him disqualified for the reasons stated in the ordinance. It was further held that the discretion vested in the town clerk was of a judicial nature, and subject to review in the courts for any arbitrary exercise thereof.

While it is true that the ordinance considered in the last mentioned case provides that the town clerk shall issue the desired license "unless," while § 17 of the ordinance now before us provides that the commissioner shall issue the license "if," we do not think that the ordinances are essentially different in their structure or intent. In each instance the officer of the municipality is called upon to exercise a discretion of a judicial nature, and his failure to act or his affirmative acts may be reviewed in the courts in case he refuses to exercise his discretion or exercises the same arbitrarily.

We are of the opinion that § 17 of the ordinance which is the subject matter of this action is valid.

The opinion of the supreme court of the United States in the case of *Hall v. Geiger-Jones Co.*, 242 U.

S. 539, supports this conclusion, as does that of the supreme court of California in the case of *Riley v. Chambers,* 181 Cal. 589, 185 Pac. 855.

The case of *Seattle v. Gibson,* 96 Wash. 425, 165 Pac. 109, cited by respondent, is not controlling upon this point, as the section of the municipal ordinance which the court in that case held unconstitutional purported to vest in the license committee of the city council a purely arbitrary discretion, and provided no standard of qualifications by which the merits of an applicant could be measured, nor any rule of procedure for making an investigation concerning the qualifications of an applicant for a license. The ordinance under examination in that case did not direct the license committee to make any investigation concerning the application for a license, but provided only that it might "in its discretion" do so. As stated by the court,

". . . the ordinance leaves to the license committee the authority arbitrarily to grant or reject a petition for a license to operate or conduct a drug store and pharmacy."

For the reasons stated, the *Gibson* case is not controlling on the question of the validity of § 17, *supra.*

A more serious and difficult question is presented by the portion of § 21, *supra,* which provides for the closing of shops for the sale of meat at six o'clock on the afternoon of each day; which section the superior court also held unconstitutional and void. At the outset it may be assumed that the appellant city of Seattle may exercise within its limits a police power as ample in its scope as that possessed by the state legislature itself, provided, as stated by appellants in their brief, the exercise thereof be "reasonable and consistent with general laws." State constitution, § 11, Art. XI, *Shepard v. Seattle,* 59 Wash. 363, 109 Pac. 1067, 40 L. R. A. (N. S.) 647; *Detamore v. Hindley,* 83

Wash. 322, 145 Pac. 462; *Seattle v. Ford,* 144 Wash., 107, 257 Pac. 243.

It may also be conceded that, under Rem. Comp. Stat., § 8966, appellant city has authority, under paragraph 33 thereof, "to grant licenses for any lawful purpose," under paragraph 34 "to regulate the carrying on within its corporate limits of all occupations which are of such a nature as to affect the public health or the good order of said city," and under paragraph 36 "to make all regulations necessary for the preservation of public morality, health, peace, and good order within its limits."

It is also undoubtedly the law that municipal legislation tending to the preservation of the public health will be regarded favorably by the courts, and that all such regulations concerning the business of handling or selling meats have a close and direct relation to the public health, safety and general welfare, and that the business referred to is subject to reasonable regulation by municipal authority.

From these bases, we proceed to determine whether or not an ordinance providing that meat shops must close at six o'clock on the afternoon of each day is a valid exercise of the police power vested in appellant city.

Appellants argue earnestly and at length that the ordinance is intended to prevent the smuggling into the city, "under the cover of darkness and in the hours when the meat inspectors are off duty," of "slunk" veal and other unwholesome meat products.

We are unable to see how the closing to the buying public of meat shops at six o'clock in the afternoon will even tend to prevent such nefarious practices. The law may close the front door of a shop to prospective customers, but how this would operate to close the back door to the unlawful and surreptitious entry of

unwholesome or uninspected meats, we do not comprehend.

We are not now concerned with the portions of the ordinance providing for the inspection of meat products, or with those prohibiting the sale of such products unless the same have been regularly inspected. Neither do we consider any possible question as to the validity of the portion of § 21 which forbids the receipt, at any shop or restaurant, of meat except between the hours of seven o'clock in the morning and six o'clock in the afternoon.

The sole question to be now determined is the validity of the provision of the ordinance which forbids the keeping open of a butcher shop for the sale of meat products to the public later than six o'clock in the afternoon.

In the first place it must be borne in mind that the business with which we are here concerned is a lawful and nowise objectionable business, and is located on private property. This renders inapplicable to this situation opinions in which are construed legislative enactments concerning pool halls, card rooms, dance halls, pawn shops and businesses which increase fire hazards or attract large crowds of people; also such decisions as concern regulatory legislation having reference to businesses conducted upon the public streets or other public places.

In the recent case of *Seattle v. Ford,* 144 Wash. 107, 257 Pac. 243, Judge Tolman, speaking for a majority of this court, sitting *En Banc,* says:

"The courts will go far in sustaining the exercise of the police power for the preservation of the public health and safety, and in so doing private rights in conflict therewith are overridden; but on the other hand, the courts are equally concerned to see that, under the guise of protecting the public, private business

—especially that carried on upon private property— is not arbitrarily restricted or interfered with.''

The general rule is stated in 43 C. J. 213, as follows:

''While the police power is very broad, it has its limitations. The same limitations apply to the exercise of the police power by municipal regulations as apply to statutes enacted under such power. Regulations enacted in exercise thereof must be reasonable, have proper objects, must be subordinate to the constitution and to general statutes; must not invade private rights, and must not be discriminatory. Regulations must not be in restraint of trade or tend to establish monopoly. However, theoretically, at least, there can be no conflict between exercise of police power and constitutional inhibitions, as the legitimate scope of the one ends where the other begins; and hence, so long as municipal bodies confine their enactments within the proper limits of such power, they do not violate the private rights of the individual. The limit imposed is that the regulations, whatever they may be, shall be reasonable, and for the protection of property, the public health, the public morals, the public safety, or the welfare of the inhabitants of such municipality.''

Regulatory legislation attempting to control a lawful business which does not fall within the objectionable or prohibitable classes, and which is conducted upon private property, must be reasonably adapted to promote the public health and general welfare in some particular manner, and must tend to prevent some existing or directly anticipated menace thereto. What is a reasonable exercise of the police power under these circumstances depends largely upon the nature or character of the undesirable conditions to be overcome or prevented. *Whyte v. City of Sacramento*, 65 Cal. App., 534, 224 Pac. 1008. There must also be some logical connection between the object sought to be accomplished by the legislation and the means prescribed to accomplish such purpose.

In the case of *City of Chicago v. Chicago & Northwestern R. Co.*, 275 Ill. 30, 113 N. E. 849, the supreme court of Illinois, in passing upon the validity of a city ordinance regulating the transportation and sale of milk, says:

"There must be some logical connection between the object sought to be accomplished by such an ordinance and the means prescribed to accomplish the end. An unreasonable ordinance will be held void by the courts."

The same court in the case of *City of Aurora v. Burns*, 319 Ill. 84, 149 N. E. 784, uses this language:

"The police power, however, has constitutional limits, and any measure enacted or adopted in its exercise, to be sustained, must bear some reasonable relation to the purposes for which the power may be exercised. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private rights. The legislative determination as to what is a proper exercise of the police power is not conclusive, but is subject to review by the courts. [Authorities.] If the means employed have no real, substantial relation to public objects within the state's power, or if those means are arbitrary and unreasonable, the judiciary will disregard mere forms and interfere for the protection of rights injuriously affected by such illegal action. [Authorities.]"

The supreme court of Connecticut, considering a statute of that state regulating the business of selling milk to the public, uses this language:

"In all these cases the regulation must not be unreasonably in excess of what is necessary to accomplish the supposed end; . . ." *State v. Porter*, 94 Conn. 639; 110 Atl. 59.

The rule is fairly stated in 43 C. J. 227, as follows:

"In order that a municipal regulation may be sustained as an exercise of the police power, the regulation must have for its object the prevention of some

offense or manifest evil or the preservation of the public health, safety, morals, or general welfare. The exercise of the police power must have a substantial basis. The power cannot be made a mere pretext for legislation that does not fall within it. There must be some clear, real, and substantial connection between the assumed purpose of the regulation and the active provisions thereof, and the provisions must in some plain, appreciable, and appropriate manner tend toward the accomplishment of the object for which the power is exercised.''

The basic underlying purpose of the ordinance in question is to prevent the sale of unwholesome meat products intended for human consumption. As a means to accomplish this desirable end, the ordinance now before us provides for the inspection of animals or carcasses and for the elimination from sale for human consumption of any which may be unfit for such use.

The ordinance, also, as above set forth, provides for the issuance of permits to persons desiring to sell meat, and for the inspection of the shops or plants maintained by such persons, which section we hold a reasonable and valid exercise of the police power of appellant city.

Does the provision of § 21 of the ordinance in question, in so far as it provides for the closing to the public of butcher shops at six o'clock p. m. of each day, reasonably tend to the carrying out of the purpose of the ordinance, to wit, to prevent the sale of uninspected or unwholesome meat to the public at large?

This court, in the case of *State ex rel. Schafer v. Spokane*, 109 Wash. 360, 186 Pac. 864, a case involving an ordinance of the city of Spokane providing for the issuance of permits in certain cases to persons desiring to operate jitney buses over the city streets, quoted with approval from the opinion of the supreme court

of West Virginia in the case of *Ex parte Dickey*, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840, as follows:

"The right of a citizen to pursue any of the ordinary vocations, on his own property and with his own means, can neither be denied nor unduly abridged by the legislature, for the preservation of such right is the principal purpose of the constitution itself. In such cases, the limit of legislative power is regulation, and that power must be cautiously and sparingly exercised, unless the business is of such character as places it within the category of social and economic evils, such as gaming, the liquor traffic, and numerous others. To this list may be added such useful occupations as may, under certain circumstances, become public or private nuisances, because offensive or dangerous to health. All of these fall within the broad power of prohibition or suppression, some wholly and absolutely and others conditionally. Such pursuits as agriculture, merchandising, manufacturing, and industrial trades cannot be dealt with at will by the legislature. As to them, the power of regulation is comparatively slight when they are conducted and carried on upon private property and with private means."

It is well settled that legislation may not, under the cloak of a police regulation, unduly restrict the constitutional right of a citizen to carry on upon private property a legitimate business which does not fall within some of the objectionable classes above designated.

The supreme court of Illinois, in the case of *The City of Chicago v. Kautz*, 313 Ill. 196, 144 N. E. 805, considering an ordinance of the city of Chicago relating to the sale and delivery of coal and kindred fuel products, says:

"In order to hold valid an ordinance of a regulatory nature, enacted under general charter powers, the court must be able to see that the ordinance tends in some degree toward the prevention of an offense or the preservation of public health, morals, safety or

welfare. [Authorities.] If under the guise of protecting the public interests, the ordinance arbitrarily interferes with the private business and imposes unusual and unnecessarily restrictive regulations upon lawful occupations, it is void. [Authorities]."

In the case of *Spann v. Gaither,* 152 Md. 1, 136 Atl. 41, the supreme court of Maryland, in passing upon the validity of an ordinance of the city of Baltimore which directed that public laundries should not operate or call for or deliver laundry between the hours of twelve o'clock midnight Saturdays and six o'clock in the morning Mondays, held the ordinance void in so far as it attempted to prohibit the operation of a laundry during the first six hours of every Monday. The court in the course of its opinion says:

"A laundry is not an obnoxious or unwholesome business, nor is it a nuisance *per se,* and its regulation can bear no relation to the public welfare, unless the public safety, order, or morals are affected by the nature of its structure, its location, or its operation."

Judge Van Fleet, United States District Judge for the Northern District of California, Second Division, in the case of *Yee Gee v. City and County of San Francisco,* 235 Fed. 757, considering an ordinance of the city of San Francisco regulating laundries, which contained a provision limiting and restricting the hours of the day within which the laundry business might be carried on and laundry work performed, says:

"Is such a regulation within the rule of reason which must govern the courts in determining its validity? For that neither a municipality nor the legislature of a state may competently interfere under the guise of a police regulation with the liberty of the citizen in the conduct of his business—legitimate and harmless in its essential character—beyond a point reasonably required for the protection of the public, is too thoroughly settled to call for any extended citation of authority in its support."

A careful consideration of the ordinance in question, and an application thereto of the principles which we have discussed, convinces us that the provision of § 21 thereof, which purports to make it unlawful for any shop conducted for the sale of meat and meat products to keep open for business after six o'clock in the afternoon, does not in any practical manner tend to prevent the sale to the public at large of unwholesome meat products, is, under existing circumstances, an unreasonable interference with the rights of the plaintiff in this action, and is consequently unconstitutional and void.

We do not, in holding § 21, *supra,* unconstitutional, adopt the doctrine that a municipality has no authority whatever to control by ordinance the hours during which a shop for the sale of meat products may remain open. As to whether or not an ordinance providing that shops close at some hour appreciably later than six o'clock in the afternoon should be held constitutional, we express no opinion.

The judgment of the trial court will be modified by striking therefrom all reference to § 17 of Ordinance number 48711 of the city of Seattle. In so far as the judgment restrains appellants from enforcing against respondent the provisions of § 21 of that ordinance, requiring that shops for the sale of meat products close at the hour of six o'clock in the afternoon, the judgment appealed from is affirmed. Neither party will recover costs upon this appeal.

FULLERTON, C. J., and MAIN, J., concur.

HOLCOMB, J. (dissenting).—I concur in all except the disallowance of costs to respondent. I see no reason for that; on that, I dissent.