[No. 26053    En Banc.    May 19, 1936.]

TACOMA BREAD COMPANY, INC., *Appellant,* v. G. L.
MANKERTZ, *Respondent.*[1]

*Stratton, Leader, Little & Stratton (Robert L. Pal-mer,* of counsel), for appellant.

*Harry R. Lea,* for respondent.

HOLCOMB, J.—This action was brought by appellant to enjoin respondent from making and selling loaves of balloon bread, or any other bread, in violation of certain rules and regulations promulgated by the state director of agriculture on July 9, 1935.

The complaint alleges, in substance, that it and respondent are competing bakers doing business in Pierce county, Washington; that the state director of agriculture, pursuant to authority granted him under the laws and statutes of the state, promulgated certain

[1]Reported in 57 P. (2d) 1056.

rules and regulations governing bakeries, of which rule 38 reads:

"Pans or forms used for the baking of bread shall not exceed the following dimensions:

"One pound open top................ 9″   x4½″x2¾″
"One and one-half pound open top..12¼″x4½″x2¾″
"One pound Pullman .............. 9″   x4″   x4″
"One and a half pound Pullman....13″   x4″   x4″
"Two pound Pullman..............16″   x4″   x4″
"Three pound Pullman.............20″  .x4½″x4½″
"Bottom or health bread, when sliced or wrapped, shall not exceed the above lengths for the corresponding weights."

The complaint further alleges that, on October 28, 1935, respondent commenced to bake in his bakery at Puyallup, one pound open top loaves of bread, twelve inches in length instead of nine inches, as provided in the rules and regulations above quoted, and is continuing to so manufacture one pound balloon loaves; that such balloon loaves do not contain any greater quantity of foodstuffs than the regular one pound open top loaf baked in conformity with such rules and regulations, but that, because of the additional length and swelled proportions thereof, they give an erroneous impression to the customers that such balloon loaves do, in fact, contain a greater quantity of foodstuffs; that, when loaves of balloon bread are cut into slices, such slices do not contain as much food value as slices of similar size of one pound open top loaves baked in conformity with the rules and regulations; that, in the process of baking balloon bread, the dough is so mixed, rolled and processed as to cause additional quantities of air, gases and other substances to be mixed with and added to the dough so as to reduce and seriously affect the quality and strength of the bread, resulting in the adulteration of such bread below the standard

of quality, purity and strength provided for under the rules and regulations of the director.

It is then alleged that appellant and respondent sell their bread, for the most part, in Pierce county and are therefore competitors, and that no other bakery in Washington, other than respondent, sells balloon bread in violation of these rules and regulations. It is further alleged that the majority of customers, although eating bread by the slice, purchase it by the loaf and therefore purchase one pound loaves of balloon bread twelve inches in length in preference to one pound loaves nine inches in length baked in conformity with rule 38, because the greater length and size of the balloon loaf gives the appearance to the customer that such loaf contains more strength and quality than the shorter loaf baked in conformity with the rules and regulations; that respondent, in making and selling balloon bread, has obtained a great competitive advantage over appellant and other bakers in Pierce county, causing an irreparable loss of customers, profits and other damages, and will continue to do so as long as he is permitted to bake and sell such balloon bread.

Upon the showing in the complaint, a show cause order was entered by the court, but on the return day thereof, upon a hearing on affidavits submitted on behalf of both parties, the trial judge denied the temporary injunction. Thereafter, a demurrer was sustained to the complaint; and upon the refusal of appellant to plead further, the action was dismissed.

There is no necessity of summarizing or analyzing the facts in this case. It is purely a question of law, as we view it.

The sections under which the director of agriculture pretended to act were Rem. Rev. Stat., §§ 6133 to 6137, and the provisions of Rem. Rev. Stat., § 10851

[P. C. § 4-93], conferring upon the director power formerly exercised by the commissioner of agriculture relating to foods, drugs and the like, and to regulate bakeries.

Rem. Rev. Stat., § 6137 [P. C. § 2546], is the only provision pertinent to the present inquiry. It reads:

"The commissioner of agriculture shall, from time to time, with the approval of the agricultural advisory board, adopt, publish and enforce reasonable and uniform rules and regulations against the adulteration and misbranding of foods and drugs, and shall adopt, publish and enforce, as the standards of this state, the standards of quality, purity and strength adopted and applied by the United States department of agriculture, in the enforcement of the laws of the United States against the adulteration and misbranding of foods and drugs, except in cases where other standards are specifically prescribed by the laws of this state."

The legislature therein did not delegate to the director any authority to adopt any standards of quality, purity and strength, except such as had been adopted and applied by the United States department of agriculture, and then only in cases where other standards are not specifically prescribed by the laws of this state. It is not contended that the United States department of agriculture has adopted any standard of quality, purity and strength for bread. He is given no authority whatever under that section alone to establish such standard of quality, purity and strength of foods in general, or bread in particular.

Rem. Rev. Stat., § 11626 [P. C. § 7250-50], reads:

"It shall be unlawful for any person to manufacture, sell or offer or expose for sale, any bread except in the following weights, which shall be the net weights twelve hours after baking; one pound, one and one-half pounds, two pounds, three pounds, four pounds

and five pounds, or other pound weights: *Provided,* That variations at the rate of one ounce per pound over, and one ounce per pound under, the above specified unit weights are permitted in individual loaves, but the average weight of not less than twelve loaves of any one unit of any one kind shall not be less than the weight hereinabove prescribed.''

The legislature has also defined ''adulterated'' in Rem. Rev. Stat., § 6146 [P. C. § 2537], as follows:

''For the purposes of this act an article shall be deemed to be adulterated: . . . In case of food: First, if any substance has been mixed and packed with it so as to reduce or lower or injuriously affect its quality or strength. Second, if any substance has been substituted wholly or in part for the article. Third, if any valuable constituent of the article has been wholly or in part abstracted. Fourth, if it be mixed, colored, powdered, coated, or stained in a manner whereby damage or inferiority is concealed. Fifth, if it contains sodium sulphite or any added poisonous or other added deleterious ingredient which may render such article injurious to health: . . . Sixth, if it consists in whole or in part of a filthy, decomposed or putrid animal or vegetable substance, or any portion of an animal unfit for food, whether manufactured or not, or if it is the product of a diseased animal, or one that has died otherwise than by slaughter.''

It certainly would be preposterous to say that the admixture of more air into a loaf of bread than other loaves contain would be adulteration within the meaning of the above definition.

It is also absurd to say that, because a one pound loaf is twelve inches long, it is not as good as a one pound loaf nine inches long.

Regardless of all other questions, it is impossible to say that the bread manufactured by respondent is either adulterated or does not conform to the statutory weight prescribed by § 11626, *supra.* The legislature has conferred upon the director authority only to see

that no poisonous substances shall be placed in bread by any bakery, and that sanitary and other provisions surrounding the place of manufacture are enforced in order that its will be made operative.

These regulations go far beyond and outside that power. The challenged regulation of the director has no reasonable relation to the protection of purchasers of bread against fraud by short weights, or by adulterations. Cf. *Burns Baking Co. v. Bryan*, 264 U. S. 504, 44 S. Ct. 412, 32 A. L. R. 661; *Petersen Baking Co. v. Bryan*, 290 U. S. 570, 54 S. Ct. 277, 90 A. L. R. 1285. See, also, *Brown v. Seattle,* 150 Wash. 203, 272 Pac. 517.

Alike in principle is the case of *Inman v. Sandvig,* 170 Wash. 112, 15 P. (2d) 696, in which we held that a rule adopted by the director of agriculture providing that third grade apples shall not be wrapped nor packed nor lidded in a standard apple box in this state, is unreasonably discriminatory and in violation of the state constitution, Art. 1, § 3, providing that no person shall be deprived of property without due process of law.

We concur with the trial judge that the director exceeded his authority in promulgating rule No. 38.

Affirmed.

BEALS, BLAKE, MAIN, MITCHELL, STEINERT, GERAGHTY, and TOLMAN, JJ., concur.

MILLARD, C. J. (concurring)—I agree with counsel for appellant that the legislature may establish a standard loaf of bread—fix a maximum weight for each size or class of loaves (*Petersen Baking Co. v. Bryan,* 290 U. S. 570, 54 S. Ct. 277, 90 A. L. R. 1285)— and that the legislature may delegate such authority to the director of agriculture. As the legislature has not prescribed the weights or sizes of loaves of bread, nor

has the legislature delegated to the director of agriculture the authority to fix the weight for each size or class of loaves of bread, it follows that the judgment must be affirmed.